COMMONWEALTH *vs.* BENJAMIN TILLEY.

Suffolk.   May 7, 8, 1951. — June 29, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Accessory and Principal. Evidence,* Res inter alios, Hearsay, Of criminal proceedings, Competency.   *Practice, Criminal,* Dismissal of indictment; Exceptions: what questions open; Variance.   *Pleading, Criminal,* Indictment.

The question whether the proof at a criminal trial supported the charge set forth in the indictment was not open in this court on an exception to the denial of a motion to dismiss the indictment presented before any evidence was introduced.

Conviction of a defendant of being an accessory after the fact to a felonious larceny was not precluded on the ground of variance where the indictment charged that the alleged principal broke and entered a building in the night time with intent to commit larceny and therein stole property exceeding $100 in value and that the defendant was an accessory after the fact to "the felony aforesaid," and there was no proof that the alleged principal so broke and entered but merely that he committed such a larceny and that the defendant was an accessory after the fact thereto.

A finding that the defendant in an indictment was guilty of being an accessory after the fact to a felonious larceny within G. L. (Ter. Ed.) c. 274, § 4, as amended, was warranted by evidence that the defendant, knowing of the commission of the larceny by an acquaintance of his with whom he was in contact, offered to procure and took steps toward procuring a return of the stolen property to its owner in exchange for payment of a substantial reward by the owner to the principal.

At the trial of an indictment charging the defendant with being an accessory after the fact to a felony, the record of a conviction of the alleged principal on a charge of committing the felony was res inter alios and incompetent as proof that he in fact had committed it.

Evidence that one charged with committing a felony had pleaded guilty was hearsay and incompetent as proof that he in fact had committed the felony at the trial of an indictment against another person for being an accessory after the fact to such felony.

INDICTMENT, found and returned on April 29, 1949.

In the Superior Court, a motion to dismiss the indictment was denied by *Higgins,* C.J., and the case was heard by *Brogna,* J., without jury.

*J. H. Soble*, for the defendant.

*Edward M. Sullivan*, Assistant District Attorney, for the Commonwealth.

SPALDING, J. The indictment in this case alleged that on March 21, 1949, one Edward J. McAleney did break and enter in the night time "a certain building . . . to wit: the shop of one Murry Spiegel . . . with intent . . . to commit larceny, and did then and there in said building steal" certain described property belonging to Spiegel of the value of $2,285. The indictment then charged the defendant with being an accessory after the fact to "the felony aforesaid." See G. L. (Ter. Ed.) c. 266, § 16, as appearing in St. 1943, c. 343, § 1; c. 266, § 30, as appearing in St. 1945, c. 282, § 2; c. 274, § 4, as appearing in St. 1943, c. 488, § 1. The trial was before a judge of the Superior Court sitting without a jury. No evidence having been offered by the Commonwealth of breaking and entering in the night time by the principal, McAleney, the judge found the defendant guilty on so much of the indictment as charged him with being an accessory to larceny. The case comes here on the defendant's exceptions to the admission of certain evidence, to the denial of several motions, and to the judge's refusal to grant certain of the defendant's requests for rulings.

1. Before the trial the defendant filed a motion to dismiss the indictment. No grounds are set forth in the motion. Nor does the bill of exceptions reveal any grounds urged in support of it. The motion was rightly denied. The indictment follows the form prescribed by G. L. (Ter. Ed.) c. 277, § 79, as amended by St. 1943, c. 488, § 2. The defendant does not challenge the form of the indictment; rather he argues that the proof does not support the charge. But that question is not open. The motion here was presented before any evidence was introduced. At that time the only question raised by the motion was the legal sufficiency of the indictment. See *Commonwealth* v. *Pascone*, 308 Mass. 591, 593.

2. At the close of the evidence the defendant presented

motions for findings of not guilty.[1] See *Commonwealth* v. *Carter*, 306 Mass. 141, 143; *Commonwealth* v. *Jensky*, 318 Mass. 350, 354. The motions and several requests for rulings, which were denied subject to the defendant's exceptions, raise the questions (1) that there was a fatal variance between the indictment and the proof, and (2) that the evidence failed to establish that the defendant was an accessory.

The defendant first argues, in effect, that the indictment does not allege that McAleney committed the offence of larceny but alleges that he committed the offence of breaking and entering in the night time with intent to commit larceny and larceny, and that the allegation that the defendant knew McAleney to have committed "the felony aforesaid" has reference to McAleney's breaking and entering with intent to commit larceny and larceny but not to the substantive crime of larceny on his part. The defendant concedes that on a similar indictment McAleney might have been convicted solely of larceny but urges, without supporting authority, that a conviction of himself as accessory on proof that McAleney only committed larceny would amount to a variance between the indictment and the proof.

This contention rests upon a misconception of the legal effect of the allegations of the indictment. The allegations as to the acts of McAleney follow the common law form of indictment for burglary (see *Commonwealth* v. *Hope*, 22 Pick. 1, 4–6) by alleging that McAleney not only committed the substantive crime of breaking and entering in the night time with intent to commit a felony but also committed the separate substantive felony of larceny of property of the value of over $100. McAleney might have been convicted simply of larceny without proof of a breaking and entering because the indictment in legal effect charges a larceny as well as a breaking and entering. *Kite* v. *Commonwealth*,

---

[1] One of the motions requested a finding of "not guilty on the charge of being an accessory after breaking and entering in the night time with intent to commit larceny"; the other requested a not guilty finding "on the charge of being an accessory after larceny."

11 Met. 581, 583. *Commonwealth* v. *Clifford*, 254 Mass. 390, 392. Here the indictment fairly charges the defendant with being accessory after the fact not only to a felonious breaking and entering but also to a larceny amounting to a felony, and there is no fatal variance between the indictment and the proof merely because the Commonwealth offered no evidence in support of the allegations as to a breaking and entering by McAleney. Proof that the principal felon had committed the crime of larceny was sufficient. See *State* v. *Burbage*, 51 S. C. 284, 295.

The defendant next argues that the evidence was insufficient to warrant a finding of guilty of being an accessory after the fact to larceny. The following is a summary of the evidence most favorable to the prosecution. One Murry Spiegel was engaged in the business of selling hearing aids in Boston, and on August 18, 1948, sold the defendant such an instrument. Between that date and March 21, 1949, the defendant came to Spiegel's place of business several times to confer with him in regard to the transaction. In substance the defendant wanted Spiegel to take the instrument back and refund the money, which Spiegel refused to do. In December, 1948, the defendant brought the hearing aid to Spiegel, leaving it with him in order that he might sell it for the defendant's account. Sometime between 5:15 P.M. on March 21, 1949, and 9:00 A.M. on March 22, 1949, Spiegel's shop was broken into and some forty hearing aids and accompanying accessories were stolen, including the instrument belonging to the defendant. On the same day the defendant appeared at Spiegel's place of business and asked for his hearing aid. Spiegel said nothing of any loss but gave the defendant a different hearing aid which the latter took with him.

A few days later the defendant returned and informed Spiegel that the instrument which he had given him was not the one he had previously purchased. Spiegel then explained that there had been a "robbery" and that the defendant's instrument was one of those stolen. The defendant asked what progress had been made by the police

in the matter and "offered to help and said he might be able to help locate the instruments, . . . [as] he had connections and could do things that the police could not do with regard to matters of this kind." The defendant asked Spiegel whether he would be willing to pay $300 or $400 to the men who had the property, and Spiegel replied he would be. Three or four days later the defendant told Spiegel he had located the missing instruments, that they were all in good condition, and that it would cost Spiegel $500 to obtain their return. Spiegel said he was unwilling to pay until the numbers and condition of the instruments were checked. The defendant asked for, and Spiegel gave him, a list of the missing instruments so that the defendant might check them. Subsequently the defendant told Spiegel that the price had been reduced to $400.

On the night of April 6, 1949, in response to instructions by the defendant, Spiegel, under police observation, drove to an appointed rendezvous and met the defendant. From there the defendant drove Spiegel's automobile to the "Commonwealth Avenue side of the reservoir." The defendant said that was "the meeting place"; that they would leave $400 of the defendant's money in the automobile; that they would take a walk; that "the men" would leave the instruments in the automobile; and that, if upon their return the instruments were in the automobile, Spiegel might take them to his office, check them, and pay the defendant later. Accordingly, Spiegal and the defendant left the money in the automobile, remained away for five minutes, and returned to find the money but not the missing hearing aids. The defendant said that "either Spiegel had been followed or he, the defendant, got his directions mixed up." After driving around the reservoir "looking for the other car," the defendant left in order to use the telephone. He returned shortly, saying he would call Spiegel later when he had had time to find out what had happened. They then drove back to the original rendezvous.

Meanwhile, the police had observed an automobile following Spiegel's automobile away from the rendezvous where

Spiegel had met the defendant. The police chased this automobile through the streets of Brookline and observed McAleney, the driver, throw out two bags which were subsequently found to contain the missing hearing aids and the check list Spiegel had given the defendant. McAleney was captured, and the defendant was arrested on his return to the rendezvous. When arrested, the defendant said, "You see what happens when you try to do a favor." He admitted he had known McAleney for ten years but said he did not know what the latter did for a living. There was evidence, the admissibility of which will be discussed later, that McAleney was the one who had originally stolen the hearing aids, and the case was tried on the footing that their value exceeded $100.

From the promptness with which the defendant appeared on the scene of the loss with his offer to help Spiegal secure the return of the missing instruments from "the men who had them," from the ease with which the defendant located the instruments, and from the fact that the defendant had obviously been in contact with his acquaintance McAleney who had the missing articles, as evidenced by the latter's possession of the check list given the defendant, we think the judge was warranted in finding that the defendant knew that McAleney was the person responsible for Spiegel's loss of the instruments. The evidence was sufficient to warrant a finding that a larceny of the instruments had been committed. *Commonwealth* v. *Mason,* 105 Mass. 163, 168. *Commonwealth* v. *Cabot,* 241 Mass. 131, 143. We think the evidence was also sufficient to warrant a finding of the defendant's guilt as accessory after the fact to larceny. See *Commonwealth* v. *Spezzaro,* 250 Mass. 454; *Commonwealth* v. *Wood,* 302 Mass. 265, 272–273. We think that one who knowingly assists the principal felon to entice a reward for the return of stolen property to its rightful owner is to be considered as giving "other aid" to such offender with the intent that he "shall avoid or escape detention, arrest, trial or punishment" within the meaning of G. L. (Ter. Ed.) c.

274, § 4, as amended.[1]  In thus assisting the principal to dispose of the stolen property the defendant would be aiding him in escaping detection or punishment.  See *The Queen* v. *Butterfield,* 1 Cox. C. C. 39; *The King* v. *Levy,* [1912] 1 K. B. 158.  He would also be enabling the principal to obtain ready funds for purposes of escaping arrest and punishment.

3.  Two of the defendant's exceptions relate to evidence. One arises from the introduction of the record in the case against McAleney, the principal, which showed that he had pleaded guilty to so much of the offence (breaking and entering in the night time with intent to commit larceny and larceny) as charged larceny and was sentenced to serve six months in the house of correction.  The other was to the admission of the testimony of a police officer to the effect that he was present in the Superior Court and heard McAleney plead guilty to the indictment.

Of course, proof of the commission by the principal of the felony charged was essential to the Commonwealth's case.  *Commonwealth* v. *DiStasio,* 298 Mass. 562, 566.

In support of the admissibility of the record of conviction of McAleney the Commonwealth relies on *Commonwealth* v. *Knapp,* 10 Pick. 477.  In that case the defendant was tried as an accessory before the fact for murder.  Since at the time of the trial St. 1830, c. 49 (see now G. L. [Ter. Ed.] c. 274, §§ 3, 5), had not been enacted, the common law rule applied and it was incumbent on the prosecution to show that the principal had been convicted.  The principal alleged in the indictment was John Francis Knapp who had previously been convicted.  Counsel for the defendant stated that he would contest the fact that John Francis Knapp was a principal.  The Attorney General argued that the record of Knapp's conviction was prima facie evidence that he was a principal.  Conceding that the record was

---

[1] That section, so far as material, provides, "Whoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon . . . or gives such offender any *other aid,* knowing that he has committed a felony . . . , with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact . . ." (emphasis supplied).

conclusive evidence to prove the fact of the conviction, the defendant's counsel argued that as evidence of the principal's guilt it was res inter alios. Putnam, J., speaking for the court, ruled as follows: "The verdict is to be taken as prima facie evidence of the guilt of J. Francis Knapp. It may be rebutted by showing that there was no murder, or that Francis was not in a situation where he could take a part as a principal. We cannot stop the evidence offered, in limine. The prisoner has the burden of proof. He must show the jury that Francis ought not to have been convicted. He is not to make the propriety of the conviction questionable merely; he must prove it to have been clearly wrong" (page 484). It will be noted that the record was admitted not merely to prove the fact of the conviction. For that purpose it was clearly admissible. *Sayles* v. *Briggs*, 4 Met. 421. *Commonwealth* v. *Hayes*, 253 Mass. 541, 542. Rather it was admitted for a broader purpose, namely, as prima facie evidence of the guilt of John Francis Knapp as principal. In other words it was received as evidence of the truth of facts involved in the conviction. If the *Knapp* case correctly states the law, it must be conceded that it is authority for the admissibility of the record in the case at bar. We have found no case in our Reports since the *Knapp* case in which the principle there decided has been applied. In *Commonwealth* v. *York*, 9 Met. 93, 123, the language of Putnam, J., quoted above, was referred to in connection with another point.

It becomes necessary to consider the case of *Commonwealth* v. *Elisha*, 3 Gray, 460, relied on by the defendant. There the defendant was indicted for receiving stolen goods, knowing them to have been stolen. To prove that the goods in question had been stolen, the prosecution, subject to the defendant's exception, introduced the record of persons convicted on their pleas of guilty on another indictment charging larceny of the property. In holding that the evidence was improperly admitted this court said, "Was the record of . . . [the thieves'] conviction on another indictment against them only, upon their several pleas of guilty

to a charge of stealing the property, legal evidence, against the defendant, that they did steal it? We think not, either on principle or authority. That conviction was res inter alios. The defendant was not a party to the proceedings, and had no opportunity nor right to be heard on the trial. And it is an elementary principle of justice, that one man shall not be affected by another's act or admission, to which he is a stranger. That conviction being also on the confession of the parties, the adjudged cases show that it is not evidence against the defendant" (page 461). The *Knapp* case was not referred to. The *Elisha* case was followed by the Supreme Court of the United States in *Kirby* v. *United States*, 174 U. S. 47, in which the principles involved were exhaustively discussed. To the same effect are *Roberts* v. *People*, 103 Colo. 250, 256–261; *State* v. *Gargano*, 99 Conn. 103; *People* v. *Kief*, 126 N. Y. 661; *State* v. *Bachelor*, 67 S. D. 259, 265–268; *Rex* v. *Turner*, 1 Moody C. C. 347.

Since the decision in the *Elisha* case, if not before, it has been the established law of this Commonwealth that in a criminal case the record of conviction or acquittal in another case to which the defendant was not a party is not admissible to establish the truth of any fact involved in such conviction or acquittal. *Mead* v. *Boston*, 3 Cush. 404, 407. *Commonwealth* v. *Waters*, 11 Gray, 81, 82–83. *Commonwealth* v. *Lincoln*, 110 Mass. 410. *Commonwealth* v. *Cheney*, 141 Mass. 102, 106. *Pilos* v. *First National Stores Inc.* 319 Mass. 475, 477. See *Minasian* v. *Aetna Life Ins. Co.* 295 Mass. 1, 3. The rule excluding such judgments is not restricted to criminal cases, although it is especially applicable to such cases because of the right of a defendant under art. 12 of the Declaration of Rights "to meet the witnesses against him face to face." See *Kirby* v. *United States*, 174 U. S. 47, 55. In the recent case of *Pilos* v. *First National Stores Inc.* 319 Mass. 475, 477, this court, citing many authorities, said, "it is the general rule that judgments in criminal cases bind only the parties thereto, that is, the Commonwealth and the defendant, and that they are res inter alios in civil actions between individuals and in criminal prosecutions

against other defendants." No ground appears for departing from this principle here unless it be that a different rule ought to obtain in cases involving an accessory. We are of opinion that such a distinction is not sound. To the extent that anything decided in the *Knapp* case is at variance with this rule we do not follow it. It follows that the record of conviction of McAleney ought not to have been admitted.

The testimony of Officer McDermott to the effect that he had heard McAleney plead guilty to the indictment in the case against him was likewise inadmissible. That evidence was plainly hearsay and was nonetheless such because it was in the form of a plea of guilty in court. It does not come within any of the recognized exceptions to the hearsay rule. We are aware that there is authority elsewhere to the effect that a plea of guilty by the principal is admissible at the trial of the accessory to show the commission of the principal felony. *United States* v. *Hartwell*, 3 Cliff. 221. *Mulligan* v. *People*, 68 Colo. 17, 27–29. *Howard* v. *State*, 109 Ga. 137, 140. *State* v. *Mullins*, 95 Kans. 280. *Gibson* v. *State*, 53 Tex. Cr. 349, 363–366. See Wigmore on Evidence (3d. ed.) § 1079 (c). There is authority to the contrary, however. *State* v. *Rand*, 33 N. H. 216, 224. *Ogden* v. *State*, 12 Wis. 532. *Rex* v. *Turner*, 1 Moody C. C. 347. See *Commonwealth* v. *Elisha*, 3 Gray, 460. This rule has never been recognized in this Commonwealth and we are not now disposed to adopt it.

Since the admission of the foregoing evidence was prejudicial to the rights of the defendant, the exceptions must be sustained.

*So ordered.*