COMMONWEALTH *vs.* EDWARD A. REYNOLDS
(and six companion cases against the same defendant).

Suffolk.    October 6, 1958. — November 25, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Evidence,* In rebuttal, Relevancy and materiality, Admissions and confessions, Admitted without objection, Admitted generally, Res inter alios, Of criminal proceeding, Hearsay, Identification of person in court room, Of intent. *Accessory. Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Requests, rulings and instructions.

At the trial of indictments for being an accessory before the fact to burning a building, in which the defendant had a beneficial interest, with intent to injure its insurer and for conspiring so to burn it, it was prejudicial error for the judge to exclude evidence as to the cost of taking down the burned building and of levelling the building lot and as to substantial bank deposits of the defendant's wife and sister, which was offered to rebut evidence introduced by the Commonwealth to show a precarious financial situation of the defendant as a motive for the crimes charged. [133–134]

Commonwealth *v.* Reynolds.

Testimony of a police officer assigned to the State fire marshal who investigated a fire which destroyed a building, that he believed the fire was not of incendiary origin, should have been admitted at the trial of indictments based on an incendiary burning of the building. [134]

At the trial of indictments for being an accessory before the fact to burning a building, in which the defendant had a beneficial interest, with intent to injure its insurer and for conspiring so to burn it, testimony of the defendant as to his motive in telephoning a fire adjuster immediately upon learning of the fire should have been admitted to explain away the inference from the immediacy of his call that he was primarily interested in the insurance money. [134]

At the trial of an indictment for being an accessory before the fact to a crime, it must be proved beyond a reasonable doubt that the alleged principal committed the crime, and mere proof of the principal's conviction of the crime does not suffice as proof of its commission by him. [135]

At the trial of indictments charging the defendant with being an accessory before the fact to criminal burning of a building, evidence of an interrogation by police of his alleged principal in his presence and while he was not under arrest, during which the principal stated that the defendant was to pay him a certain sum if he set the fire and that he did set the fire, if admissible against the defendant as proof of an implied admission by reason of an equivocal and evasive response to the charges of his principal, should have been limited to being considered as proof of an admission by the defendant only of his own conduct and not of conduct of the principal of which the defendant had no knowledge; however, since the evidence was admitted without objection or request for limitation of its use, it warranted a finding that the principal committed the crime of burning the building. [135–136]

Conviction upon indictments charging the defendant with being an accessory before the fact to murder in the second degree, to burning a dwelling house, and to burning it with intent to injure its insurer, and with conspiring to burn it and to burn it with that intent, was warranted by evidence that a fire destroyed an insured apartment house in which the defendant had a beneficial interest and caused the deaths of three tenants therein, that the defendant's financial situation was precarious, that the defendant promised his alleged principal a certain sum if the principal would set the fire, and that thereafter the principal did set the fire. [136]

There was no merit in a contention by a defendant convicted of being an accessory before the fact that his constitutional right to confront witnesses against him had been violated at his trial by the admission of evidence of an interrogation at police headquarters in his presence of his alleged principal, who did not testify at his trial, which showed implied admissions of his own conduct and of guilt of his principal, where the evidence was admitted without objection or limitation of its use. [136]

In the circumstances shown by the record of the trial of an indictment for being an accessory before the fact, there was no violation of the de-

fendant's constitutional right of confrontation of witnesses or other
prejudicial error in permitting a person to be repeatedly called into the
court room by the Commonwealth and identified in the presence of the
jury as the person named in the indictment as the principal of the de-
fendant and as the one who made certain statements admitted in
evidence and implicating the defendant, although such person was not
called as a witness. [137–138]

Testimony of an alleged principal at the trial of indictments against him
and an accessory before the fact was properly admitted in evidence at
a second trial of the indictments against the accessory alone solely for
the purpose of refreshing the accessory's recollection and subject to an
instruction to the jury by the trial judge that they were to consider
such testimony not for its truth but only for such limited purpose. [138]

At the trial of an indictment for being an accessory before the fact to
burning an insured building with intent to injure its insurer, evidence
that the defendant believed he had effected additional insurance on the
building would be relevant on the issue of motive even if in fact the
policies for the additional insurance never became effective. [138–139]

SEVEN INDICTMENTS, found and returned on June 29, 1953,
and July 1, 1953.

The cases were tried in the Superior Court before *Fair-
hurst, J.*

*James D. St. Clair, (Blair L. Perry* with him,) for the
defendant.

*Francis J. Hickey,* Assistant District Attorney, (*Anthony
J. Young & Donald P. Brennan* with him,) for the Com-
monwealth.

RONAN, J.   These are appeals from convictions on in-
dictments naming one Valcourt as principal and Reynolds
as accessory before the fact to murder in the second degree
of three persons resulting from a fire set by Valcourt as
principal to a dwelling house in which they were tenants;
with being an accessory before the fact to burning a dwell-
ing house; with conspiracy to burn a building with intent
to injure the insurers; with conspiracy to burn a dwelling
house; and with being an accessory before the fact to the
burning of a building with intent to injure the insurers. The
convictions of Valcourt were affirmed and the convictions
of Reynolds were reversed after a previous trial. *Com-
monwealth* v. *Valcourt,* 333 Mass. 706. A trial against Rey-
nolds alone followed and the cases are here upon an assign-

ment of errors alleged to have been committed at his second trial.

At about 6:30 on the morning of June 24, 1953, fire destroyed a house containing twelve apartments at 40 Isabella Street, Boston, causing the death of three of the tenants. On that day legal title to the property was in Valcourt. It is not disputed that Valcourt held the legal title to the property as a straw for Reynolds. Reynolds had financial interests in several parcels of real estate. He was both a real estate operator and a licensed insurance agent. Valcourt had been in Reynolds's employ for about eight years as a handy man and had been, prior to an accident he suffered in the autumn of 1952, janitor at another property for Reynolds. At the time of the fire, Valcourt was out of work and on welfare. He was then living with the janitor upon this other property.

The second assignment of error (exception 16) relates to the exclusion of testimony of one Shuman as to the cost of taking down the burned building, and the third assignment (exception 17) relates to the exclusion of testimony of one Martin as to the cost of levelling the building lot. The evidence was offered in rebuttal of evidence that the defendant's financial situation was precarious and to show that, in some respects, it would be disadvantageous to the defendant to defraud the insurers. The evidence, if believed, would establish items of cost that would be incurred by the defendant in the event of a fire. The precarious financial condition of the defendant could be shown by the Commonwealth as "a motive for the crime." *Commonwealth* v. *Valcourt*, 333 Mass. 706, 719. That decision, however, indicates that "when such evidence had been introduced the defendant had the right to rebut it." Even though there is no evidence that the defendant intended to rebuild the destroyed property, the evidence of costs which the defendant would be likely to incur in the event of a fire was admissible to rebut the testimony as to motive.

Assignments 4 and 5 (exceptions 25 and 26) are to the exclusion of evidence that the defendant's wife had a de-

posit of $2,480.21 and his sister a deposit of $1,415.40 in certain banks. If the deposits were available to the defendant, he should have been permitted to show them to rebut the evidence of motive introduced by the Commonwealth. *Commonwealth* v. *Haddad*, 250 Mass. 391. *Commonwealth* v. *Cooper*, 264 Mass. 368. It would not be illogical to assume that the money would be available to Reynolds.

Assignment 10 (exception 28) is to the exclusion of testimony of one Crowley, a police officer assigned to the State fire marshal, who investigated the fire and was of the opinion that the fire was not of incendiary origin. *Gechijian* v. *Richmond Ins. Co.* 305 Mass. 132, 142. The evidence should have been admitted.

Assignment 7 (exception 19) is based upon the exclusion of testimony of the defendant as to his motive in telephoning a fire adjuster immediately upon his getting word of the fire. The evidence should have been admitted as it would have tended to explain away the inference from the immediacy of his call that he was primarily interested in the insurance money.

These rulings upon evidence appear to have been prejudicial to the defendant.

The defendant has assigned as error (assignment 11) the refusal of the trial judge to grant motions to direct verdicts of not guilty. The relevant evidence on this issue was the following. On June 25, 1953, the day following the fire, Valcourt was taken to police headquarters and interrogated concerning the fire. Reynolds was sent for and was confronted by Valcourt. Shorthand notes were taken by one Shanahan, the police stenographer, of extended questioning of Valcourt in Reynolds's presence, during which Valcourt made statements that Reynolds was to pay him $100 if he would set the fire and that he, Valcourt, did set the fire. Reynolds testified that he replied that he emphatically denied the statement by Valcourt. There was a conflict in the evidence whether Reynolds made such a denial. The stenographer was permitted to read his notes of Valcourt's

statement without objection or limitation of the applicability of the evidence in any way and the police officer in charge was permitted without objection or limitation of his testimony to confirm the stenographer's account.

In the first trial against both Valcourt and Reynolds, there was proof of Valcourt's guilt and also evidence, although somewhat thin, that Reynolds was an accessory. In this second trial against Reynolds alone, and in order to convict him, it was necessary to prove beyond a reasonable doubt that Valcourt, the alleged principal, was guilty of setting the fire. *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 353. *Commonwealth* v. *DiStasio,* 298 Mass. 562, 566. Valcourt did not testify at the second trial although he was led into the court room and identified by various persons. This, of course, did not prove that Valcourt committed the principal offences. The mere fact that Valcourt had been previously convicted for these crimes was not proof of this in the instant trial. See *Commonwealth* v. *DiStasio,* 298 Mass. 562, 566; *Commonwealth* v. *Tilley,* 327 Mass. 540.

We assume that the stenographer's testimony was admissible against Reynolds, who was not then under arrest, as tending to prove that Reynolds made an implied admission of Reynolds's own conduct charged by Valcourt. See *Commonwealth* v. *Valcourt,* 333 Mass. 706, 716. There was conflicting testimony whether Reynolds denied the charges against him or made an equivocal answer when called upon to explain them. Reynolds's answers, if found to be equivocal or evasive, could be viewed as admissions, *Commonwealth* v. *Madeiros,* 255 Mass. 304, 313, *Commonwealth* v. *Hebert,* 264 Mass. 571, 578, *Commonwealth* v. *Graham,* 279 Mass. 466, 468, in which case the charges would be admissible solely for the limited purpose of laying a foundation for the replies. *Commonwealth* v. *Kenney,* 12 Met. 235, 237. There could be, however, no implied admission by Reynolds of Valcourt's statements about the latter's own conduct of which it was not shown Reynolds had direct knowledge. Valcourt's statements about his own conduct were as against Reynolds inadmissible hearsay and, upon

his request seasonably made, should have been excluded by appropriate instructions from consideration upon the issue whether Valcourt had committed the principal crime. *Commonwealth* v. *Kenney*, 12 Met. 235, 237. *Commonwealth* v. *Boris*, 317 Mass. 309, 317–318. *Refrigeration Discount Corp.* v. *Catino*, 330 Mass. 230, 238. See *Solomon* v. *Dabrowski*, 295 Mass. 358, 359–360. No request for such limitation of the use of the evidence was ever made, perhaps because it was incorrectly assumed that the evidence was offered and received solely for the purpose held proper in our earlier decision (333 Mass. 706, 713–717). These hearsay statements, however, admitted without objection, contained evidence of Valcourt's commission of the principal crime. Directed verdicts were not required.

The argument that this evidence violates the defendant's constitutional right of confrontation is without merit. Had this hearsay evidence been admitted generally despite an exception by the defendant, there might be merit in this contention. As indicated above, that was not the case here. *Commonwealth* v. *Tilley*, 327 Mass. 540, 546–549, where the inadmissible evidence was admitted subject to exception, is clearly distinguishable. *Commonwealth* v. *Elisha*, 3 Gray, 460, appears also to rest upon the inadmissibility of evidence admitted subject to exception and was so treated in the discussion of the *Elisha* case in the *Tilley* case (at p. 547).

In this case we are not called upon to consider whether circumstances could ever exist in which the requirements of due process of law and substantial justice would make it necessary to consider the extent to which highly prejudicial but palpably incompetent evidence improvidently admitted without objection or proper limitation should be used as the basis of a conviction. Here the convictions must be reversed in any event on other grounds.

What has been said also disposes of the defendant's assignment of error numbered 14 to the failure to give the defendant's requested instruction, "If you find that the defendant Reynolds, by any form of words denied the accusations made against him by Valcourt in his presence at police headquar-

ters then you must totally disregard the accusations made by Valcourt." We assume that this instruction would have been proper and necessary if the stenographer's testimony had been properly limited upon appropriate request by the defendant. The instruction, however, was not required where the statements of Valcourt, as reported by the stenographer, were admitted generally, without objection or limitation, and were not appropriately confined to an offer and receipt of them in evidence as tending to prove implied admissions by Reynolds of Valcourt's charges. *Ventromile* v. *Malden Elec. Co.* 317 Mass. 132, 135. *Comeau* v. *Beck*, 319 Mass. 17, 19. We do not mean to intimate that the judge in his discretion could not have limited the use of the evidence by an apt instruction in his charge, but he was not bound to do so in the absence of prior seasonable objection.

The first assignment of error (exceptions 8, 9, 10, and 11) was to permitting Valcourt, who was led into the court room, to be identified in the presence of the jury as the person named in the indictments as principal to Reynolds, but without calling him as a witness. Valcourt, in fact, was called into the court room eight times to be identified, but never took the stand. It seems probable that the Commonwealth wished to avoid calling Valcourt because it feared that Valcourt would have denied, as he did at the first trial, having set the fire and would have denied having made statements implicating Reynolds. This tactic of the Commonwealth, of necessity, requires careful scrutiny of the record to be certain that the Commonwealth did not unfairly attempt to give the impression that Valcourt had testified. As has been indicated, the police stenographer's testimony about the interrogation of Valcourt at police headquarters was admissible independently as a foundation for proving Reynolds's alleged implied admissions by the character of his replies or silence. Upon seasonable request it should have been limited (and doubtless would have been) to this narrow purpose by careful instructions. That Valcourt was called into the court room several times and identified, as the person who made the statements, does not of

itself, however, warrant the charge that he was "used as a witness against" the defendant. Valcourt was never called upon to testify. In no sense was any testimonial evidence elicited from him. His appearances were for purposes of identification only. Doubtless, it was within the discretion of the trial judge, and his duty, to make sure that the repeated use of Valcourt for purposes of identification did not tend to mislead the jury into thinking that such use of Valcourt was the equivalent of his testimony. In the circumstances shown by the record, however, we cannot say that calling Valcourt for identification was prejudicial error.

By the eighth assignment of error (exceptions 22 and 23) the defendant contends that he was deprived of his constitutional right of being confronted by Valcourt by the manner in which the Commonwealth dealt with Valcourt as just described and by the reading of a part of Valcourt's testimony at the first trial. That testimony concerned a suit of clothes allegedly given to Valcourt by Reynolds. The judge admitted the testimony solely for the purpose of refreshing Reynolds's recollection and instructed the jury that they were to consider the testimony not for its truth but only for the limited purpose. For that limited purpose the testimony was admissible.

We need not decide, in view of the circumstance that the convictions must be reversed in any event, whether there was error, as assigned in the fifteenth assignment of error, in the instruction that Reynolds as agent of the insurer could make an oral contract of insurance covering his own property, but we comment upon it as the question is likely to arise at a new trial. There was evidence that the property was insured for $16,000 when policies were drawn up, but not signed, which if they became effective would have increased the insurance to $36,000. Valcourt in the presence of Reynolds at police headquarters said that he was told by Reynolds that "the sooner . . . [Valcourt] touched it off the better" and that when Valcourt remarked that someone might be burned to death Reynolds replied that he needed the money. Indeed the jury could find that Rey-

nolds himself stated to the police that he had increased the fire insurance by $20,000 a few days before the fire. This evidence bore upon Reynolds's motive and tended to show that he believed that he had so increased the insurance, even if his oral binder to himself did not effectively bind the insurance company, and even if it was later discovered that by reason of his failure to send a daily sheet to the insurer, or to sign the policies, or for some other reason, the policies never became effective. See *Commonwealth* v. *Bader,* 285 Mass. 574. It has been said that the intent to injure the insurer may be found even if the property is not over insured. *Commonwealth* v. *Alba,* 271 Mass. 333, 338. The appropriate charge on the issue of these policies would have been to direct the jury's attention to the question whether Reynolds believed he had effected additional insurance rather than to the technical legal effect of what he had done.

We need not consider the ruling excluding the testimony of Dr. Baker given at a former trial who was absent at this trial or other questions which are not likely to arise at the next trial.

> *Judgments reversed.*
> *Verdicts set aside.*
> *Cases remanded to the Superior Court.*