COMMONWEALTH *vs.* JOHN JOSEPH KERRIGAN.

Middlesex.    May 3, 1965. — June 8, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Constitutional Law*, Raising question of constitutionality, Assistance of counsel, Confrontation of witnesses. *Practice, Criminal*, Appeal; Capital case; New trial; Exceptions: failure to save exception; Assistance of counsel. *Evidence*, Admissions and confessions.

Although the record on an appeal by the defendant in a capital case from denial of a motion for a new trial showed that he had taken no exception to any ruling by the judge at the hearing of the motion and so had brought no issue of law to this court as of right, this court, assuming that it might do so, reviewed such record under G. L. c. 278, § 33E. [297]

On a motion for a new trial by the defendant in a capital case following a certain decision by the Supreme Court of the United States, the defendant was entitled to raise a constitutional question under such decision not raised at the trial of the case prior to such decision. [298]

Statements made by the defendant in a criminal case during an interrogation by police officers were not rendered inadmissible at his trial by violation of his right to assistance of counsel under the Sixth Amendment of the Federal Constitution, as interpreted in *Escobedo* v. *Illinois*, 378 U. S. 478, where the interrogation was only investigatory in nature and not accusatory of the defendant nor intended to elicit a confession from him, even if he was not informed of his right to remain silent and was not afforded an opportunity to consult counsel. [298–299]

The right of the defendant at the trial of a criminal case to confront and cross-examine the witnesses against him under the Sixth Amendment of the Federal Constitution, as interpreted in *Pointer* v. *Texas,* 380 U. S. 400, and *Douglas* v. *Alabama,* 380 U. S. 415, did not require exclusion of all testimony by a witness as to what was said by an alleged accomplice, deceased before the trial, in a conversation between him and the defendant.   [300–301]

Even if, at a trial for murder by shooting, certain parts of what an alleged accomplice of the defendant said in a conversation with the defendant should not have been admitted in evidence, such parts were inconsequential and their admission was not basis for granting a motion for a new trial in view of testimony that the defendant in such conversation admitted that he fired the fatal shot.   [302]

Where counsel for the defendant at a criminal trial in cross-examination of a police officer asked about something said in a conversation between the officer and an alleged accomplice of the defendant and accepted the judge's ruling that the entire conversation "in detail" would be admitted, no ground for granting a new trial appeared in further testimony as to the conversation, damaging to the defendant, elicited by the prosecutor from the officer on redirect examination.   [302–303]

INDICTMENT found and returned on May 31, 1961.

Following the decisions of this court reported in 345 Mass. 508 and 346 Mass. 786, the defendant on April 23, 1964, filed a second motion for a new trial, which was denied by *Fairhurst,* J.   The defendant appealed.   He filed a further motion for a new trial in this court.

*William E. O'Halloran* (*Roger Witkin* with him) for the defendant.

*Richard S. Kelley,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

WHITTEMORE, J.   1.   This is the third time that this court has dealt with the conviction of the defendant for murder in the first degree of Officer Lawrence W. Gorman. See 345 Mass. 508; 346 Mass. 786.   The second decision affirmed the Superior Court's denial on December 23, 1963, of a motion for a new trial, the motion not having been filed within one year.   G. L. c. 278, § 29, as amended by St. 1962, c. 310, § 1.

Statute 1964, c. 82, amended § 29, to read, "If it appears to the court that justice has not been done, a justice of the superior court may at any time, upon motion in writing of

the defendant, grant a new trial for any cause for which by law a new trial may be granted.'' Following this amendment another motion for a new trial was heard in the Superior Court in August and September, 1964, and denied on January 4, 1965. On this appeal from the denial of the motion,[1] pursuant to an order of a single justice of this court (G. L. c. 278, § 33E), the defendant contends that as a matter of constitutional law the motion should have been allowed. The defendant's reliance is on *Escobedo* v. *Illinois,* 378 U. S. 478. See *Commonwealth* v. *Tracy, ante,* 87, 98–99; *Commonwealth* v. *Lepore, ante,* 121, 124–125; *Commonwealth* v. *Young, ante,* 175, 179. *Commonwealth* v. *Guerro, ante,* 277, 281–282. No other issue is presented on the appeal.

The defendant has failed to conform to the requirements for bringing an issue of law to this court. The judge in his order stated, as to several of the defendant's requests for rulings which raised issues under the *Escobedo* case, that he had refused to consider them as ''the matter might have been raised at the trial.'' The defendant took no exception to this action (equivalent to a denial of the requests) or to any other rulings. Within two days the defendant filed a claim of appeal. There is, therefore, as of the defendant's right, no issue of law now before this court. G. L. c. 278, §§ 33B, 33D. *Commonwealth* v. *Bellino,* 320 Mass. 635, 645–646. *Commonwealth* v. *Chester,* 337 Mass. 702, 703–704. *Commonwealth* v. *Kiernan,* 348 Mass. 29, 33. We assume, nevertheless, without deciding, that we may review the record on the motion for a new trial on the murder indictment to determine whether under G. L. c. 278, § 33E, ''for any . . . reason that justice may require'' a new trial should be had. In the absence of findings of fact in the Superior Court our review is made on the affidavits that were before the judge read in the light of the transcript of the testimony at the trial.

---

[1] Motions for new trial in respect of four other judgments under companion indictments were also heard and denied. The appeals as to these motions present no separate issue.

The *Escobedo* decision was handed down June 22, 1964. It states an important new aspect of a defendant's rights under the Constitution of the United States. The contention is that the principle of the case barred the admission in evidence of statements made by Kerrigan in the course of police interrogations. The applicability of the principle does not depend upon the issue having been raised at trial. It is presently applicable, the judgment remaining unexecuted. *Commonwealth* v. *Guerro, ante,* 277, 280–281.

It is undisputed that when questioned on September 3, 1960, the day of Officer Gorman's murder, Kerrigan made several false, exculpatory statements on the strength of which he was released. Edgar W. Cook was caught at the murder scene. He escaped from jail on May 14, 1961. In the course of the escape a deputy master was murdered. A reward was offered. There was evidence that on May 17, 1961, Kerrigan brought Cook to the apartment of John W. Fratus, as his "roommate" for a period. Fratus later that day went to the police. Kerrigan was arrested on May 17 and thereafter questioned. Some of the questions were in Fratus's presence; a few were after Fratus had said that Kerrigan had brought Cook to the apartment and had spoken of getting another gun. The inquiry of ·Kerrigan appears to have been investigatory of the murder at the jail.[2] Again Kerrigan made false, exculpatory answers. All of the false statements of 1960 and 1961 were received in evidence in cross-examination when Kerrigan took the stand and testified inconsistently therewith. He readily admitted their falsity.

These false statements were not made in the course of interrogations to which the *Escobedo* rule is applicable. In that opinion (378 U. S. at 492) the court said: "Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' . . . by gathering information from witnesses and by other 'proper investigative ef-

---

[2] The stenographic transcript dated May 18, 1961, is entitled "Investigation re murder of David Robinson [the deputy master]." Kerrigan was arraigned on May 18, 1961, as accessory after the fact to that murder.

forts.' . . . We hold only that when the process shifts from investigatory to accusatory — when its focus is on the accused and its purpose is to elicit a confession — our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." The police process, in the course of which Kerrigan was interrogated, had not, as we read the record, shifted from "investigatory to accusatory," nor was its "purpose . . . to elicit a confession." This is dispositive.

It is inferable that at the time of these questions Fratus had not told the police of Kerrigan's admission in Fratus's presence (see Part 2 below) that he had shot Gorman. The questioning did not continue significantly after Kerrigan asked and was given permission to call an attorney.[3]

Additionally there is strong indication that Kerrigan spoke willingly and apparently coöperated. The conclusion is warranted that during much of the inquiry he hoped and felt that he would be able to establish an alibi and make it stick. See *United States* v. *Vita,* 294 F. 2d 524, 529 (2d Cir.). As to the questions in May, 1961, there is an affidavit of an officer tending to show that when Kerrigan was brought to the police station on May 17 his attention was called to a posted notice of his statutory right to telephone for an attorney. See G. L. c. 276, § 33A, as amended through St. 1960, c. 269. (Statute 1963, c. 212, sets out a later amendment.)

We are not impressed by Kerrigan's affidavit to the effect that a number of times earlier he had asked for an attorney and that the requests were refused. The affidavits to the contrary presented by the Commonwealth are consistent with the other indications of the record.

2. The defendant on May 18, 1965, filed in this court a third motion for a new trial with a brief embodied therein.

---

[3] The police, after Fratus had spoken, asked Kerrigan if Cook was "in that apartment." Kerrigan then made the request for an attorney. Following this an officer asked Kerrigan if he cared to answer as to what he had said earlier about not having seen a certain telephone number and about an A. & P. store on Tremont Street. Kerrigan answered the questions. They were plainly investigatory and at the trial the defendant was not questioned about his answers.

The Commonwealth has filed an answering brief. We do not pause to decide whether at this stage we have jurisdiction to rule on the motion. It shows no "reason that [in] justice . . . require[s] . . . a new trial." G. L. c. 278, § 33E.

The defendant contends that rulings at the trial deprived him of the right guaranteed by the Sixth Amendment to the Constitution of the United States, "to be confronted with the witnesses against him" as that right is interpreted by two cases decided on April 5, 1965. *Pointer* v. *Texas,* 380 U. S. 400. *Douglas* v. *Alabama,* 380 U. S. 415.

The right of confrontation is assured to defendants in this Commonwealth by art. 12 of the Declaration of Rights ("every subject shall have a right . . . to meet the witnesses against him face to face") and by G. L. c. 263, § 5 ("A person accused of crime shall at his trial be allowed . . . to meet the witnesses produced against him face to face").

We do not read the *Douglas* or *Pointer* cases as assuring a different or broader right. These cases, presenting a Federal question because the "Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right . . . made obligatory on the States by the Fourteenth Amendment" (*Pointer* case, 380 U. S. at 403), exemplify the rule that confrontation includes the right to cross-examine the witness whose testimony is admitted against the defendant. This aspect of the right is recognized and stressed in our decisions. *Commonwealth* v. *Slavski,* 245 Mass. 405, 413–418. *Commonwealth* v. *Gallo,* 275 Mass. 320, 328–334. *Commonwealth* v. *Millen,* 289 Mass. 441, 455. *Commonwealth* v. *Ventura,* 294 Mass. 113, 118–119. *Commonwealth* v. *Reynolds,* 338 Mass. 130, 136. Compare *Commonwealth* v. *Richards,* 18 Pick. 434, 437 (right to have counsel cross-examine not considered).

The defendant recognizes that the point he now makes "would undoubtedly have [been] found against . . . [him]" had he "heretofore attempted to press an appeal on the basis of the inadmissibility of" the testimony that

he now specifies. His view appears to be that the *Pointer* and *Douglas* cases establish that any testimony of what an absent person said is barred. We disagree, and see nothing in the rulings as to evidence now referred to that, if deemed wrong, would not have been reviewable on the appeal from the conviction, and nothing in those rulings that in justice requires a new trial.

The defendant refers to the testimony of the informer Fratus as to the conversation between Kerrigan and his alleged accomplice, Cook, in Fratus's apartment on May 17, 1961. See Part 1, *supra.* Fratus testified that Kerrigan, in talking with Cook, admitted firing the fatal shot. 345 Mass. at 510–511. What Cook said as to Kerrigan having fired the shot was admissible to give meaning to the incriminating response. Obviously the witness against Kerrigan was Fratus, and there was the necessary confrontation and opportunity to cross-examine the witness.

The defendant contends however that other statements of Cook as testified to by Fratus were inadmissible as unrelated to express or implied admissions by the defendant. He took an exception to the judge's ruling: "I am not going to limit it in advance. . . . Any conversation that took place in that room, I will admit." The exception was not argued on the appeal (345 Mass. 508) as could and should have been done if there was merit in it. *Commonwealth* v. *Reynolds,* 338 Mass. 130, 136.[4]

---

[4] In *Commonwealth* v. *Reynolds,* 338 Mass. 130, 136, this court said: "The argument that this evidence violates the defendant's constitutional right of confrontation is without merit. Had this hearsay evidence been admitted generally despite an exception by the defendant, there might be merit in this contention. As indicated above, that was not the case here. *Commonwealth* v. *Tilley,* 327 Mass. 540, 546–549, where the inadmissible evidence was admitted subject to exception, is clearly distinguishable. *Commonwealth* v. *Elisha,* 3 Gray, 460, appears also to rest upon the inadmissibility of evidence admitted subject to exception and was so treated in the discussion of the *Elisha* case in the *Tilley* case (at p. 547). In this case we are not called upon to consider whether circumstances could ever exist in which the requirements of due process of law and substantial justice would make it necessary to consider the extent to which highly prejudicial but palpably incompetent evidence improvidently admitted without objection or proper limitation should be used as the basis of a conviction. Here the convictions must be reversed in any event on other grounds."

Although no exception is now before us we have considered the testimony referred to (see the quotation from the *Reynolds* case, fn. 4) and discern no basis in it for a new trial.[5]   It is to be borne in mind that words or conduct by Kerrigan tending to show a close relationship with Cook, who had been captured at the scene of the murder for which Kerrigan was charged, had probative force.   See *Commonwealth* v. *Gallo,* 275 Mass. 320, 337–338.   The defendant, we think rightly, recognized at the time of his appeal from his conviction the relative inconsequence of this part of Fratus's testimony in the light of the testimony of the defendant's directly incriminating admission that he had fired the fatal shot.   The failure to contend error of law where there was opportunity to rely thereon is significant.   Nothing in the recent Supreme Court of the United States decisions has altered the applicable law.

The defendant further specifies that a police officer was permitted to tell what Cook had said in description of his accomplice.   This description in part fitted Kerrigan; in part it could have been thought to show that someone else was Cook's accomplice.   The subject was opened by the defendant.   Q.   "[W]hether or not he . . . gave you some identity of his accomplice?"   THE JUDGE: "If you go into it in that form, I am going to allow the conversation in in detail."   COUNSEL FOR THE DEFENDANT: "All right, your Honor."   Q.   "Will you give us the conversation in detail?"   The more damaging testimony came in subsequent redirect examination by the Commonwealth.   The defendant sought advantage in the officer's testimony of the con-

---

[5] That "Cook was telling Kerrigan he didn't mean to kill the Master . . . [of the jail]; he tried to knock him out, just crease his skull and knock him out" did not involve Kerrigan.   Nor did it concern him that Cook told "about how easy Porter stole a car in front of the Cambridge Jail."   The defendant has specifically referred only to the foregoing testimony.   We note also Fratus's testimony that "they were talking about a bank they were going to rob, or something, right around the corner.   They were going in and shoot the first person they saw and say, 'I am Edgar Cook.' . . . Q. . . . [W]ho said that [last remark]?   A.   Edgar Cook said that."   We assume that this reference to another planned crime should have been excluded, even though probative as to the close relationship between Cook and Kerrigan.   There was, however, no specific objection thereto and there had been no request for a voir dire to screen the conversation in advance.

349 Mass. 303                                                           303

versation with Cook and accepted the ruling that he would have to take all of it. There is nothing in the contention that the admission of Fratus's testimony gave the defendant a right to see if he could show through the officer that Cook had described someone else, but left him free to object later on constitutional grounds so far as the description fitted him. The point speaks for itself. The case in no wise stands as though the Commonwealth independently had introduced Cook's description of his companion.

*Orders denying new trials affirmed.*
*Motion for new trial filed in this court denied.*