COMMONWEALTH *vs.* MAURICE J. SLANEY, JR. & another.[1]

Worcester.   January 3, 1966. — March 10, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Grand Jury.   Constitutional Law,* Equal protection of laws, Grand jury. *Practice, Criminal,* Suppression of evidence.   *Arrest.   Evidence,* Illegally obtained evidence, Evidence of identity.

A plea in abatement to an indictment should not be sustained on an alleged ground of noncompliance with G. L. c. 277, § 3, and c. 234, §§ 1, 4, in that persons qualified, but not registered, to vote were excluded from the grand jury where, even if there were such noncompliance, it was not shown by the defendant that the grand jury proceeding against him was thereby unfair.   [401–402]

Exclusion of persons under twenty-five years of age from a grand jury was not shown to have been discriminatory or to have denied equal protection of the laws to a defendant indicted by that grand jury.   [402]

It would be proper in a criminal proceeding to deny a motion to suppress evidence not specifying the evidence sought to be suppressed or the grounds therefor.   [403]

It could properly be found on conflicting evidence in a criminal proceeding against two defendants that where police without a warrant or probable cause to arrest either of them went to their homes and requested them to go to a police station they voluntarily went there and stood in a lineup, and that they were not being illegally detained when identified by viewers of the lineup as participants in the crimes with which they were charged in the proceeding; and on such findings there was no error in denying a motion by the defendants to suppress evidence of the identification as tainted by illegal detention.   [405–407]

_____

[1] Eugene A. Lambert.

INDICTMENTS found and returned in the Superior Court on May 6, 1964.

A plea in abatement was heard by *Bolster, J.*   Motions to suppress evidence were heard by *Ford, J.*

*H. Hoover Garabedian* for Slaney.

*Francis X. Murphy* for Lambert.

*Manuel Morse,* Assistant District Attorney, for the Commonwealth.

KIRK, J.   The grand jury indicted the defendants on charges stemming from an attempted armed robbery of a liquor store in Worcester on February 29, 1964.   The indictments charged each defendant with unlawful possession of a revolver, assault while armed with a dangerous weapon with intent to rob, and three counts of assault with a dangerous weapon.   The defendant Slaney filed a plea in abatement, alleging that the selection of the grand jurors was not according to law and unconstitutional.   The plea was overruled.   Before trial, both Slaney and the defendant Lambert moved to suppress evidence.   After hearing, the motions were denied.   The jury found the defendants guilty on all charges.   All proceedings were subject to G. L. c. 278, §§ 33A–33G.   The cases are here solely on Slaney's assignment of error in the denial of his plea in abatement and on his and Lambert's assignments of error in the denial of their motions to suppress.

Slaney's plea in abatement rested on the alleged exclusion from the grand jury of two classes of people.   The plea first contended that the jury were drawn only from lists of actually registered voters and not, as directed by G. L. c. 277, § 3, and c. 234, §§ 1, 4, from lists of those qualified to vote.   An affidavit of Slaney's counsel alone supports this contention.   No testimony or proof was offered at the hearing on the plea concerning the methods of selection employed by the jury registrars and selectmen in Worcester County with respect to the grand jury which indicted the defendant.   Nor, even assuming that the selection did not conform to the specific statutory directive, did the defendant demonstrate, either by affidavit or at the

hearing, that the alleged exclusion of nonregistered but still qualified voters impaired the fundamental fairness of the jury's proceedings against him.

The plea next contended that no person under twenty-five was on the jury list from which the panel which indicted the defendant was drawn. Slaney was twenty-five years old when indicted, and the alleged exclusion of qualified voters between the ages of twenty-one and twenty-five is said to have been unconstitutionally discriminatory and a denial of equal protection of the laws. This, according to his counsel, was the defendant's "basic point" in making the plea.

It is not enough merely to aver unconstitutional discrimination. When challenging the composition of a jury, the defendant has the burden of proving (*Akins* v. *Texas,* 325 U. S. 398, 400) that the absence of a certain class from a jury list resulted from an "arbitrary and systematic" policy of exclusion, *Hoyt* v. *Florida,* 368 U. S. 57, 59, directed against an "identifiable group in the community which may be the subject of prejudice." *Swain* v. *Alabama,* 380 U. S. 202, 205.

Slaney failed to meet the standards of proof required. His counsel's affidavit was again the only support offered to prove an exclusion. He asserted but did not prove the absence of persons under twenty-five. Conceding, arguendo, the truth of the assertion, we do not think that the allegedly excluded class is the kind contemplated by the *Swain* and other cases which involved racial or political bases of discrimination. Further, even assuming that persons under twenty-five indeed constitute such a group, the record fails to demonstrate that their exclusion resulted from a systematic policy rooted in prejudice. There was no error in overruling the plea in abatement either on statutory or constitutional grounds. See *King* v. *United States,* 346 F. 2d 123, 124 (1st Cir.).

We consider next the motions to suppress certain evidence. It is incumbent on the excepting party to show that he has been harmed by the ruling of the judge. *Common-*

*wealth* v. *Warner,* 173 Mass. 541, 548. Nowhere in the record before us does it appear that the evidence sought to be suppressed at the hearing before trial was offered by the Commonwealth at the trial, or, if offered, was admitted over the objections and exceptions of either defendant. Compare *Commonwealth* v. *Jacobs,* 346 Mass. 300, 310–311. We do not omit the point even though the Commonwealth has not raised it. We prefer to consider the merits.

Slaney's motion on its face failed to specify the evidence sought to be suppressed and the grounds for suppression. The motion, which merely asked "for an order suppressing certain evidence which the prosecution intends to introduce against him," was patently inadequate, and could have been denied for that reason alone. The transcript of evidence at the hearing on Slaney's motion shows the practical necessity of insisting upon the requirement that motions to suppress be specific lest they become illegitimate probes of the Commonwealth's evidence. *Commonwealth* v. *Kiernan,* 348 Mass. 29, 34. *Commonwealth* v. *Roy,* 349 Mass. 224, 227. On the other hand, Lambert's motion adequately indicated the evidence sought to be suppressed — identification of the defendant in a lineup while at the police station before formal arrest — and the reason for the suppression, namely, that Lambert was illegally in custody when identified, with the alleged result that the evidence of identification thus obtained was tainted with the original illegality and so was inadmissible. Only the judge's persistent inquiry, and not Slaney's motion, eventually disclosed that Slaney sought to suppress the same evidence for the same reasons as did Lambert.

The fundamental question is the same for both cases: Were the defendants illegally detained when they were identified as participants in the crime? The evidence heard by the judge consisted exclusively of oral testimony. We have read it all. The two hearings had much in common in the sequence of events. In each there was also a conflict of testimony between the police and the defendants. In each also there were numerous inconsistencies in the

testimony of the particular defendant. The judge's denial
of the motions to suppress imports a finding that at all
relevant times the particular defendant was not unlawfully
detained.

We summarize the pertinent testimony. At 9 A.M. on
March 5, 1964, three police officers went to Lambert's cot-
tage type dwelling where he lived with his father and
mother. It was raining or sleeting at the time. They
were admitted by the mother, who called Lambert from his
bedroom. The police told Lambert they would like to have
him come to the detective bureau and talk about his where-
abouts on Saturday night and also about what happened to
his leg causing him to limp. In the presence of his father,
who was ill, and his mother, Lambert agreed to go along.
He dressed and put on a jacket. An officer told him twice
to put on his raincoat which was hanging on a post near the
door. Lambert did. There was no touching of Lambert's
person by the police except when Lambert slipped on the
front steps of his house. Lambert acknowledged that this
was an act of helpfulness. Lambert sat in the front seat
of the unmarked cruiser and was driven to the station
house, where he was told to take his "usual spot" in the
interrogation room on the second floor where he was asked
some questions about a robbery. He refused to answer
them. People were walking in and out of the room.

About 10:45 A.M. on the same day, two of the three of-
ficers who had accompanied Lambert to the police station
went to Slaney's dwelling, which was the first floor of a
three story tenement. They were admitted by his mother.
Slaney came from his bedroom. The police asked him to
come to the detective bureau on a police matter. Slaney
agreed to go with them. It was suggested that he wear a
hat. He put on a hat and, before leaving with the police,
told his mother to call his lawyer if he did not come back in
a little while. At the station he spent some time in the
large office of the detective bureau and later went to the in-
terrogation room.

It is conceded that at the time the officers went to the
dwellings of the defendants they had no warrant and no

probable cause to arrest either one. The transcript shows that the defendants made no outward sign of unwillingness to accompany the officers. There was testimony from the defendants, however, of gestures, acts and tones of voice of the officers which, they testified, had the effect of intimidating them both at their homes and at the station. The officers denied any hostile gestures, acts or harsh tones. The defendants' testimony, in summary, consisted of statements indicating fears of police reprisal if they did not coöperate. The defendants, however, did not manifest such fears either at their homes or at the station. Neither defendant made any incriminating statement to the police. Whatever interrogation there was appears to have been brief, intermittent and desultory.

About 1 P.M. the defendants stood in a lineup with several other persons who wore hats and raincoats. They were told to get into the lineup. Slaney testified that he did not object to the lineup. Although Lambert testified that he joined the lineup under protest, he was contradicted.

The defendants were identified by viewers of the lineup as participants in the crimes of February 29, 1964. They were thereupon formally arrested. Slaney immediately telephoned for his lawyer who arrived promptly at the police station. The police offered to take Lambert to the hospital for treatment of a festering opening in his leg. Upon Lambert's return he was "booked."

The issue argued is whether there was illegal detention prior to the formal arrests with the result that evidence obtained prior to the formal arrests through "exploitation of that illegality" would have to be suppressed. *Wong Sun* v. *United, States,* 371 U. S. 471, 488. Thus, the admissibility of the evidence on identification "turns upon the narrow question of when the arrest occurred, and the answer to that question depends upon an evaluation of the conflicting testimony" of those who participated in the events. *Rios* v. *United States,* 364 U. S. 253, 262. See *Commonwealth* v. *Lehan,* 347 Mass. 197, 206–207; *Commonwealth* v. *Young,* 349 Mass. 175, 178; and *Commonwealth* v.

*Roy,* 349 Mass. 224, 231–232. This, in turn, raises questions concerning the proper scope of police investigation and the rights of a citizen whose coöperation with the police contributes to his arrest. See *Commonwealth* v. *Kerrigan,* 349 Mass. 295, 299.

While we are aware of the still uncertain line of demarcation between legitimate investigation and unlawful detention of a suspect (see *Haynes* v. *Washington,* 373 U. S. 503, 515, 519), we think that it is clear that no illegal detention arises when a person, complying with a request by the police, voluntarily goes to a police station for questioning, and, while there, participates in a lineup. *United States* v. *Vita,* 294 F. 2d 524 (2d Cir.), cert. den. 369 U. S. 823. *United States* v. *Fay,* 323 F. 2d 65, 72 (2d Cir.), cert. den. sub nom. *Fay* v. *Williams,* 376 U. S. 915. See *Culombe* v. *Connecticut,* 367 U. S. 568, 588–589, 591, 601, 635 (opinion of Frankfurter, J.); *Stovall* v. *Denno,* 355 F. 2d 731 (2d Cir.). Compare *Seals* v. *United States,* 325 F. 2d 1006, 1009 (D. C. Cir.).

This court, in *Commonwealth* v. *Merrick,* 255 Mass. 510, 512–513, set out some of the tests determinative of voluntary coöperation. There it was said that the defendant "went with the officers without compulsion . . . with no physical manifestation of control over his liberty and no statement of intent to restrain him. No word or act of theirs had declared him within the power of the officers and he had done nothing to signify his submission to arrest." We think these tests are still valid. With respect to them, the evidence, as we have indicated, was conflicting in some respects. The judge obviously believed the police as to the essentials.

There was no suggestion of threats by the police to work their will by unlawful means. Compare *Lynumn* v. *Illinois,* 372 U. S. 528. See *Haynes* v. *Washington,* 373 U. S. 503, 522 (Clark, J., dissenting). Nor was there secrecy as to where the defendants were to go or why they were asked to go. The defendants knew and their parents knew that they were going to the police station in connection with an

investigation of a crime committed on the preceding Saturday night. No incriminating statements were made by the defendants. The evidence sought to be suppressed was a factual conclusion made by persons who observed the defendants at the station house. It was not the result of "detention *incommunicado*" over a long period of time as in *Culombe* v. *Connecticut, supra,* at 640 (Douglas, J., concurring). Nor did it come from confessions or admissions obtained at a time when the process had demonstrably shifted from investigatory to accusatory while the defendants were in custody and without counsel. *Commonwealth* v. *Lepore,* 349 Mass. 121, 124. *Commonwealth* v. *Young,* 349 Mass. 175, 179. *Commonwealth* v. *Kerrigan,* 349 Mass. 295, 298–299. See *Stovall* v. *Denno,* 355 F. 2d 731, 739, (2d Cir.). Compare *Commonwealth* v. *Guerro,* 349 Mass. 277, 281–282, and *Escobedo* v. *Illinois,* 378 U. S. 478, 490–491. The precise question was whether the defendants were illegally detained when the identification was made. The record gives us no basis for overturning a decision emanating from an assessment of the witnesses' credibility that they were not illegally detained. There was no error.

*Judgments affirmed.*