JACKSON *v.* THE STATE.

BECK, J. 1. Under the facts of this case, a statement of irrelevant evidence voluntarily made by a witness, and in regard to which, upon objection being made by counsel for the defendant, the solicitor-general said, in the hearing of the jury, "We have no objection to that going out," no further ruling of the court being invoked by counsel for the accused, is not ground for a new trial merely because the court failed to reprimand the witness or to caution the jury against being influenced by the irrelevant testimony.

2. Where a husband finds his wife at night in company with a man, and the wife then and there discloses to the husband that she is guilty of acts of infidelity, and that the man in whose company she is is her paramour, and that she intends to continue her acts of infidelity and lascivious intercourse with the man in whose company she is found, and the husband, in the heat of passion excited by the words and conduct of his wife, shoots and kills her; on the trial of the husband under in-

dictment charging him with the offense of murder, the jury, if they believe the circumstances were such as to justify the excitement of passion and that the defendant was not actuated by malice or a spirit of revenge, would be authorized to find the defendant guilty of voluntary manslaughter.

(a) The killing of the wife by the husband under the circumstances just enumerated could not be justifiable homicide.

(b) While the court's charge upon the subject of justifiable homicide was inaccurate and incomplete, it does not afford the defendant in this case any ground for a new trial, inasmuch as neither under the evidence nor the statement of the accused was he entitled to a charge upon the subject of justifiable homicide, and the charge as given stated the law more favorably to him than he was entitled to have it stated.

3. The court did not err, as against the defendant, in charging the jury as follows: "The court charges you that if you believe that the deceased was the wife of the defendant, and that, he coming on her at night with another man, she made known to him her infidelity, or acted in such a manner or used such words as to cause him at that time to believe in her infidelity, and he, believing it, in a sudden heat of passion supposed to be irresistible, caused by it, killed his wife, then it would be for you to say whether or not that is such provocation as would reduce the homicide from murder to manslaughter." While the charge was not entirely accurate, the inaccuracy was not of such a nature as to afford cause for the grant of a new trial.

4. Where the court, in charging upon the subject of voluntary manslaughter, enumerated certain facts and circumstances which the defendant in his statement set forth in extenuation of the killing, and submitted to the jury the question as to whether these were sufficient to justify the excitement of sudden heat of irresistible passion under the influence of which the accused contended that he had killed his wife, and there were no other facts and circumstances in the case sufficient to provoke such sudden heat of passion, the charge was not open to the criticism that "it restricted the jury to a consideration of one defense only contended for by the defendant, and excluded from their consideration any other equivalent circumstances to justify the excitement of passion supposed to be irresistible and to exclude all idea of deliberation or malice, either express or implied."

5. Failure to charge the law on the subject of the impeachment of witnesses is not a ground for a new trial, in the absence of a timely written request for such a charge.

Judgment affirmed. All the Justices concur.

FEBRUARY 15, 1911.

Indictment for murder. Before Judge Mitchell—motion for new trial before Judge Merrill. Lowndes superior court. October 20, 1910.

Tom Jackson was found guilty upon an indictment charging him with murder. The decedent alleged to have been murdered was Gertrude Jackson, the wife of the accused. Upon the trial of

the case the following evidence was introduced: Fred Childs, a witness for the State, testified that he was accompanying Gertrude Jackson to her home on the night when the homicide occurred; that when he reached a certain location in the town of Valdosta he saw a man standing between two houses, and that when the witness and Gertrude Jackson reached a placê opposite him the man referred to threw a piece of iron at her. It was then about ten o'clock at night. The man who threw the iron did not speak. Gertrude Jackson started to run, and the man who threw the iron, without saying a word, commenced to shoot. The witness did not know at whom the assailant was shooting. The witness then ran off. The location described was near the home of one Gussie Jones, who was also introduced as a witness for the State, and whose attention at the time of the shooting was first attracted by hearing Gertrude Jackson scream, and a minute or two afterwards the witness heard a pistol fired five times. When the shooting ceased the witness went outside and then saw the defendant stamping upon the body of some one. Witness went to where Gertrude Jackson was lying, and found that she was dead. L. E. Ellis, deputy sheriff, testified that in a statement freely and voluntarily made the defendant said to him: "I killed her because I loved her and she wouldn't treat me right."

The defendant in his statement admitted the killing, and said: "I was on my way. I had been up town and was going back. I met this man and my wife together, and I asked her what she meant by being up town late hours of the night and my young'n at home nearly dead, and she said for me to go on and let her alone, that she was her own woman and had her man, and she grabbed him in the bosom, and they started on, and I shot both of them to kill both of them. She said she was going to the house to have him, and I didn't want her to have this man. She was my wife. That's why I done what I did. I was sorry of it. As it is, I done it to keep her from having him. What I mean is that she was going to bed with him, and they started on off, and she told me that that was her man. I shot to kill both of them at once, and that time this fellow he broke and run. I loved her and I worked hard for her, and done everything I could to satisfy her. We had a baby, and she wouldn't look after it. She was staying about the streets late hours of the night."

*S. M. Varnedoe* and *James M. Johnson,* for plaintiff in error.

*H. A. Hall, attorney-general,* and *J. S. Ridgdill, solicitor-general,* contra.