COMMONWEALTH vs. GEORGE A. SCHNOPPS.

Berkshire. October 9, 1980. — March 16, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Practice, Criminal,* Instructions to jury.

At the trial of a defendant charged with the murder of his estranged wife, the judge erred in refusing to instruct the jury on voluntary manslaughter where there was evidence from which the jury could have found that the defendant shot his wife in the heat of passion after her sudden admission of adultery. [180-182]

INDICTMENTS found and returned in the Superior Court Department on October 29, 1979.

The cases were tried before *Alberti,* J.

*John F. Rogers (David O. Burbank* with him) for the defendant.

*Francis X. Spina,* Assistant District Attorney (*Anthony J. Ruberto, Jr.,* District Attorney, with him) for the Commonwealth.

ABRAMS, J. On October 13, 1979, Marilyn R. Schnopps was fatally shot by her estranged husband George A. Schnopps. A jury convicted Schnopps of murder in the first degree, and he was sentenced to the mandatory term of life imprisonment.[1] Schnopps claims that the trial judge erred

---

[1] Schnopps was also convicted of unlawfully carrying a firearm and sentenced to a one-year term of imprisonment to be served concurrently with his life sentence. On appeal, Schnopps has not argued or briefed any error concerning the conviction on the firearms charge. We deem Schnopps's failure to brief any issue concerning this conviction as a waiver. "An 'appellate court need not pass upon questions or issues not argued in the brief.'" *Commonwealth* v. *Cundriff,* 382 Mass. 137, 150 n.22 (1980), quoting from Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Commonwealth* v. *Redding,* 382 Mass. 154, 156 n.4 (1980).

by refusing to instruct the jury on voluntary manslaughter. We agree. We reverse and order a new trial.

*The voluntary manslaughter claim.* Schnopps does not claim that there was insufficient evidence to warrant the jury's verdict of murder in the first degree. He claims, however, that there is evidence which required the judge to instruct the jury on voluntary manslaughter. In deciding whether the judge should have charged on manslaughter, we assume the version of the facts most favorable to the defendant. *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975).

We summarize those facts. Schnopps testified that his wife had left him three weeks prior to the slaying. He claims that he first became aware of the problems in his fourteen-year marriage at a point about six months before the slaying. According to the defendant, on that occasion he took his wife to a club to dance, and she spent the evening dancing with a coworker. On arriving home, the defendant and his wife argued over her conduct. She told him that she no longer loved him and that she wanted a divorce. Schnopps became very upset. He admitted that he took out his shotgun during the course of this argument, but he denied that he intended to use it.

During the next few months, Schnopps argued frequently with his wife. The defendant accused her of seeing another man, but she steadfastly denied the accusations. On more than one occasion Schnopps threatened his wife with physical harm. He testified he never intended to hurt his wife but only wanted to scare her so that she would end the relationship with her coworker.

One day in September, 1979, the defendant became aware that the suspected boy friend used a "signal" in telephoning Schnopps' wife. Schnopps used the signal, and his wife answered the phone with "Hi, Lover." She hung up immediately when she recognized Schnopps' voice. That afternoon she did not return home. Later that evening, she informed Schnopps by telephone that she had moved to her mother's house and that she had the children with her. She

told Schnopps she would not return to their home. Thereafter she "froze [him] out," and would not talk to him. During this period, the defendant spoke with a lawyer about a divorce and was told that he had a good chance of getting custody of the children, due to his wife's "desertion and adultery."

On the day of the killing, Schnopps had asked his wife to come to their home and talk over their marital difficulties. Schnopps told his wife that he wanted his children at home, and that he wanted the family to remain intact. Schnopps cried during the conversation, and begged his wife to let the children live with him and to keep their family together. His wife replied, "No, I am going to court, you are going to give me all the furniture, you are going to have to get the Hell out of here, you won't have nothing." Then, pointing to her crotch, she said, "You will never touch this again, because I have got something bigger and better for it."

On hearing those words, Schnopps claims that his mind went blank, and that he went "berserk." He went to a cabinet and got out a pistol he had bought and loaded the day before, and he shot his wife and himself. When he "started coming to" as a result of the pain of his self-inflicted wound, he called his neighbor to come over and asked him to summon help. The victim was pronounced dead at the scene, and the defendant was arrested and taken to the hospital for treatment of his wound.

The issue raised by Schnopps' appeal is whether in these circumstances the judge was required to instruct the jury on voluntary manslaughter. Instructions on voluntary manslaughter must be given if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool. See *Commonwealth* v. *Stokes*, 374 Mass. 583, 592 n.6 (1978); *Commonwealth* v. *Coleman*, 366 Mass. 705, 715-716 (1975). A verdict of voluntary manslaughter requires the trier of fact to conclude that there is a causal connection between the provocation, the heat of pas-

sion, and the killing. See *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931); R. Perkins, Criminal Law 69 (2d ed. 1969).

Schnopps argues that "[t]he existence of sufficient provocation is not foreclosed absolutely because a defendant learns of a fact from oral statements rather than from personal observation," *Commonwealth* v. *Bermudez,* 370 Mass. 438, 440 (1976), and that a sudden admission of adultery is equivalent to a discovery of the act itself, and is sufficient evidence of provocation, *id.* at 441. See *Whidden* v. *State,* 64 Fla. 165, 167 (1912); *Jackson* v. *State,* 135 Ga. 684, 685 (1911); *Haley* v. *State,* 123 Miss. 87, 104 (1920); *Soderman* v. *State,* 97 Tex. Crim. 23, 28 (1923); *Hannah* v. *Commonwealth,* 153 Va. 863, 868-872 (1929); *Bryan* v. *Commonwealth,* 131 Va. 709, 718-719 (1921); *State* v. *Flory,* 40 Wyo. 184, 204 (1929); 2 C. Torcia, Wharton's Criminal Law § 156, at 248-249 (14th ed. 1979). Schnopps asserts that his wife's statements constituted a "peculiarly immediate and intense offense to a spouse's sensitivities." *Commonwealth* v. *Bermudez, supra* at 442. He concedes that the words at issue are indicative of past as well as present adultery. Schnopps claims, however, that his wife's admission of adultery was made for the first time on the day of the killing, and hence the evidence of provocation was sufficient to trigger jury consideration of voluntary manslaughter as a possible verdict.

The Commonwealth quarrels with the defendant's claim, asserting that the defendant knew of his wife's infidelity for some months, and hence the killing did not follow immediately upon the provocation. Therefore, the Commonwealth concludes, a manslaughter instruction would have been improper. The flaw in the Commonwealth's argument is that conflicting testimony and inferences from the evidence are to be resolved by the trier of fact, not the judge.

Withdrawal of the issue of voluntary manslaughter in this case denied the jury the opportunity to pass on the defendant's credibility in the critical aspects of his testimony. The

portion of Schnopps' testimony concerning provocation created a factual dispute between Schnopps and the Commonwealth. It was for the jury, not the judge, to resolve the factual issues raised by Schnopps' claim of provocation. See *Baker* v. *People,* 114 Colo. 50, 56-57 (1945); *Whidden* v. *State,* 64 Fla. 165, 167-168 (1912); *Jackson* v. *State,* 135 Ga. 684, 685 (1911); *Maher* v. *People,* 10 Mich. 212, 218, 221 (1862); *Haley* v. *State,* 123 Miss. 87, 104-105 (1920); *State* v. *Grugin,* 147 Mo. 39, 50 (1898); *Soderman* v. *State,* 97 Tex. Crim. 23, 28 (1923); *Bryan* v. *Commonwealth,* 131 Va. 709, 718-719 (1921). "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. . . . However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." *Commonwealth* v. *Campbell,* 352 Mass. 387, 398 (1967), quoting from *People* v. *Carmen,* 36 Cal. 2d 768, 773 (1951).

We do not question the propriety of the verdict returned by the jury. However, based on the defendant's testimony, voluntary manslaughter was a possible verdict. Therefore, it was error to withhold "from the consideration of the jury another verdict which, although they might not have reached it, was nevertheless open to them upon the evidence." *Commonwealth* v. *McCauley,* 355 Mass. 554, 562 (1969).

For the reasons stated, the judgment of the Superior Court is reversed, the verdict of murder in the first degree is set aside, and the case remanded for a new trial. The appeal from the judgment on the firearms conviction is dismissed.

*So ordered.*