COMMONWEALTH vs. JOSEPH POPE.

Suffolk.   December 20, 1982. — March 23, 1983.

Present: ARMSTRONG, GREANEY, & WARNER, JJ.

*Error*, Harmless.  *Practice, Criminal*, Motion to suppress, Failure to make objection.  *Joint Enterprise.  Breaking and Entering.*

At a criminal trial the judge did not err in refusing to consider suppression of certain statements made by the defendant where the allegations in one motion to suppress with respect to statements made by the defendant were not stated with particularity, and the affidavit accompanying the motion contained no facts with respect to any such statements, and where a second motion to suppress the statements was not timely filed and was not accompanied by a supporting affidavit.  [506-507]

At the trial of complaints charging breaking and entering and possession of a burglarious tool any error in the judge's denial of the defendant's motion to suppress a screwdriver from evidence could not have prejudiced the defendant where the complaint charging the defendant with possession of a burglarious tool identified the tool as a screwdriver and the jury found the defendant not guilty on that charge.  [507-508]

At the trial of a complaint charging breaking and entering in the daytime with intent to commit a felony, evidence was sufficient to warrant a finding that the defendant, who had been apprehended while standing next to an automobile parked near the scene of the housebreak, had been engaged in a joint venture with an individual who was caught by police while fleeing from the house and who, when asked by police for identification, took his license and registration from the glove compartment of the parked automobile.  [508-511]

This court did not consider the adequacy of a judge's instructions to the jury at a criminal trial on the law of joint venture where defense counsel did not avail himself of the judge's invitation to make suggestions at the end of the judge's charge and made no objection to the instructions as given and where the instructions created no substantial risk of a miscarriage of justice.  [511-512]

COMPLAINT received and sworn to in the Brighton Division of the District Court Department on December 30, 1981.

On appeal to the jury session of the Boston Municipal Court Department the case was tried before *Pino,* J.

*John Salsberg* for the defendant.

*Linda M. Poulos,* Assistant District Attorney, for the Commonwealth.

WARNER, J.  The defendant appeals from a conviction by a jury on a complaint charging him with breaking and entering in the daytime with intent to commit a felony.[1]  He assigns as error the denial of his motion to suppress certain physical evidence and statements, the refusal to rule on his motion to suppress statements, the denial of his motion for a required finding of not guilty, and the instruction given to the jury on the theory of joint venture.  We affirm the judgment.

1. *The motions to suppress.*  Prior to trial the defendant filed a motion to suppress, alleging that as a result of an illegal search by police officers a screwdriver was found on the defendant's person and praying that the screwdriver "along with any statements made by the defendant" be suppressed because obtained in violation of his State and Federal constitutional rights.  The affidavit of the defendant attached to the motion referred only to the search during which the screwdriver was found.  During the hearing on the motion, the judge ruled that he would not consider suppression of any statements made by the defendant, as the issue was not properly raised in the motion.  The judge denied his motion to suppress the screwdriver but made it clear to the defendant's counsel that he could raise objections based on the lack of Miranda[2] warnings (apparently the only objection the defendant's counsel wished to advance with respect to statements of the defendant to the police) at trial.  Massachusetts Rule of Criminal Procedure 13(a)(2), 378 Mass. 871 (1979), requires that a motion to suppress set forth the grounds "with particularity."  Further, the rule requires

---

[1] The jury found the defendant not guilty on a complaint charging him with possession of a burglar's tool.

[2] *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

that an affidavit be attached "detailing all facts relied upon in support of the motion." The allegations in this first motion to suppress with respect to statements made by the defendant were general and not particular, and the affidavit contained no facts whatsoever with respect to any such statements. There was no error in the judge's refusal to consider the suppression of statements made by the defendant as being properly raised by this motion. See *Commonwealth* v. *Kiernan*, 348 Mass. 29, 34-35 (1964), cert. denied sub nom. *Gordon* v. *Massachusetts*, 380 U.S. 913 (1965); *Commonwealth* v. *Slaney*, 350 Mass. 400, 403 (1966).

The screwdriver found on the defendant by the police in a pat-down search was introduced at trial. The complaint charging the defendant with the possession of a burglar's tool identified the tool as a screwdriver. The jury found the defendant not guilty on the charge. It is incumbent on the defendant to show that he has been harmed by the ruling of the judge on the motion to suppress. *Commonwealth* v. *Slaney, supra* at 402. The defendant has not argued any such harm.

After the jury were empanelled but before testimony began, the defendant presented a second motion to suppress, alleging that he was not properly given his Miranda rights and seeking the suppression of all statements made by him to the police. No affidavit in support of this motion was attached. The judge accepted the motion for filing but refused to act on it, referring to his prior ruling on the first motion. (It is clear that this reference meant that the defendant could raise Miranda issues as they arose at trial.) This second motion to suppress was not timely filed, Mass. R.Crim.P. 13(d)(1)(A)(i), 378 Mass. 873 (1979), nor was the affidavit required by rule 13(a)(2) attached, and the judge was, therefore, not obligated to consider the motion. See *Commonwealth* v. *McColl*, 375 Mass. 316, 322 (1978) (decided under a substantially similar Rule 61 of the Superior Court [1974]).

In his rulings on both motions the judge made clear to the defendant's counsel that he could object at trial on the basis

of the failure of the police properly to give Miranda warnings. The defendant's rights were adequately protected in the circumstances.

At trial, Officer Quinn's uncontroverted testimony was that he read the Miranda rights to the defendant from a card some time after they left the scene of the apprehension but before the defendant was booked and that the defendant stated that he understood those rights. The defendant did not during the trial challenge compliance with the Miranda rules. See *Commonwealth* v. *Smith,* 2 Mass. App. Ct. 821, 822 (1974). Officer Quinn testified that at the booking the defendant gave a false name. On the record before us, it appears that the defendant made no objection to this testimony. There is, therefore, nothing before us in this respect. See *Commonwealth* v. *Thurber,* 383 Mass. 328, 334 (1981); *Commonwealth* v. *Fullerton,* 12 Mass. App. Ct. 985 (1981). This was the only statement of the defendant offered at trial.

2. *The motion for a required finding of not guilty.* In reviewing the denial of the motion for a required finding of not guilty we view the evidence in the light most favorable to the Commonwealth to determine whether that evidence, together with permissible inferences, was sufficient as to each element of the offense charged to have "satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). See *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 239 (1982). "The inferences drawn by the jury need not be necessary or inescapable, as long as they are reasonable, possible, and not unwarranted because too remote from the ordinary course of events." *Commonwealth* v. *Chinn,* 6 Mass. App. Ct. 714, 716 (1978). See *Commonwealth* v. *Albano,* 373 Mass. 132, 134-135 (1977); *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). "Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense" (footnote omitted). *Commonwealth* v. *Drew,* 4 Mass. App. Ct. 30, 32 (1976).

The Commonwealth proceeded against the defendant on a theory of joint venture. To sustain a conviction on that theory the Commonwealth must show that the defendant "intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973). See *Commonwealth* v. *Funches,* 379 Mass. 283, 295 (1979); *Commonwealth* v. *Chinn, supra* at 716. The evidence against the defendant must show more than mere association with the perpetrator of the crime (see *Commonwealth* v. *Chinn, supra* at 717, and cases cited; *Commonwealth* v. *Amaral, supra* at 241); more than "mere presence at the commission of the wrongful act and even failure to take affirmative steps to prevent it" (*Commonwealth* v. *Benders,* 361 Mass. 704, 708 [1972]; see *Commonwealth* v. *Michel,* 367 Mass. 454, 457 [1975]; *Commonwealth* v. *Flowers,* 1 Mass. App. Ct. 415, 419 [1973]); and more than presence coupled with knowledge of the planned act (see *Commonwealth* v. *Soares,* 377 Mass. 461, 471 [1979]; *Commonwealth* v. *Casale,* 381 Mass. 167, 173 [1980]). What is required is a showing that the defendant intentionally participated in the offense "by counseling, hiring or otherwise procuring the principal, by agreeing to stand by, at, or near the scene to render aid, assistance or encouragement if it became necessary, or to assist the perpetrator in making an escape from the scene." *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. at 242. See *Commonwealth* v. *Conroy,* 333 Mass. 751, 755 (1956); *Commonwealth* v. *Soares, supra* at 471-472.

The defendant did not testify at the trial. We summarize the evidence, which was uncontroverted. On the afternoon of December 29, 1981, Officer Quinn and his partner, acting on information Quinn received, proceeded in their cruiser toward 141 Everett Street in the Allston section of Boston. The area is built up, and the single family house at number 141 is about the only house at the end of the block. On arriving at the scene Quinn observed a green automobile

parked about fifty feet away from the driveway at number 141 and on the same side of the street. There was no other automobile in the area. Quinn observed the defendant standing on the sidewalk next to the open right hand passenger door of the automobile and facing away from the house. Officer Quinn proceeded to check the house while his partner "took the defendant into custody." Quinn testified that the front door to the house was locked but that at the back of the house he found the handle and lock of the outside storm door broken and a glass panel on the inside door smashed; the door was open. The inside door had been locked and both doors in good condition when the resident left for work earlier that day. Deterred momentarily by the presence of a large German shepherd dog, Quinn entered the house and observed a television set on the kitchen floor and a man running out the front door. The television set had been in the living room when the resident left for work. Quinn apprehended the man at the side of the house, and took him to join his partner and the defendant next to the green automobile. When the man was asked by Quinn for identification, he took his license and registration from the glove compartment of the green automobile and gave them to Quinn.

After a second police cruiser arrived on the scene the two men were patted down and taken in the second cruiser to a police station. The defendant, having been given his Miranda rights, gave a false name during the booking procedure.

On the evidence the jury could reasonably have inferred that the defendant's presence next to the automobile from which the perpetrator retrieved his identification indicated prior association with the perpetrator, as well as prearrangement and knowledge of the criminal activity. The jury could also have found that the defendant's position next to the open passenger door of the automobile fifty feet from the scene of the crime was not a chance occurrence. Rather, they reasonably could have inferred that the defendant "by prearrangement was stationed in a position where he might

render . . . aid and encouragement, as a lookout to give warning, or as a decoy to beguile the police and others from possible suspicions, or as an ally in making escape or in meeting any eventuality." *Commonwealth* v. *Conroy, supra* at 755. See *Commonwealth* v. *Lucas,* 2 Allen 170, 171 (1861); *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 793 (1975); *Commonwealth* v. *Drew,* 4 Mass. App. Ct. at 31-32; *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. at 242. Finally, there was evidence that the defendant gave the police a false name during the booking procedure. Such evidence exhibits consciousness of guilt and "constitutes an implied admission which may, with other evidence, be sufficient to prove guilt." *Commonwealth* v. *Fancy,* 349 Mass. 196, 201 (1965).

We conclude that there was sufficient evidence from which the jury could have inferred the defendant's guilt beyond a reasonable doubt. There was no error in the denial of the defendant's motion for a required finding of not guilty.

3. *The charge to the jury on joint venture.* The defendant argues that the judge's instructions to the jury on the law of joint venture were inadequate because the judge did not specifically refer to the element of a shared mental state. See *Commonwealth* v. *Jones,* 6 Mass. App. Ct. 750, 758-759 (1978), and cases cited. At the close of the Commonwealth's case the judge and the defendant's counsel discussed a proposed instruction on joint venture, and the judge indicated that he would give his own instruction. He invited the defendant's counsel at the conclusion of the instructions to correct any error or suggest any addition which he thought necessary to protect the defendant's rights. At the conclusion of the initial charge there was a bench conference at the request of the defendant's counsel, and thereafter the judge gave brief further instructions on joint venture. At the conclusion of these instructions the judge asked counsel, "Anything else to add?", to which the defendant's counsel responded, "Thank you." The defendant, having made no objection, is foreclosed from raising the issue of the

inadequacy of the instructions on appeal. *Commonwealth v. Blow*, 370 Mass. 401, 407 (1976). See *Commonwealth v. Gibson*, 368 Mass. 518, 527-528 (1975); Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979).

4. We have reviewed the record and have determined that there is no substantial risk of a miscarriage of justice as a result of the actions of the judge in the matters discussed above in parts 1 and 3. See *Commonwealth v. Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth v. Redding*, 382 Mass. 154, 155 (1980).

*Judgment affirmed.*