COMMONWEALTH *vs.* WILLIAM BOTTO. January 8, 1985. *Practice, Criminal*, Indictment, Dismissal. *Larceny. Conspiracy. Armed Assault with Intent to Rob.*

This is the Commonwealth's appeal from the allowance by a judge of the Superior Court of the defendant's motion to dismiss two indictments charging him with conspiracy to commit larceny (G. L. c. 274, § 7), and armed assault with intent to rob (G. L. c. 265, § 18). The judge ruled that the evidence before the grand jury was insufficient to establish probable cause to arrest, the relevant standard for the return of an indictment. See *Commonwealth* v. *O'Dell,* 392 Mass. 445, 450-452 (1984). We reverse.

Officer Lester Sullivan of the Cambridge police department was the sole witness before the grand jury. He testified that on February 17, 1983, at approximately 8:00 P.M., he received a radio transmission advising him that an attempted armed robbery had taken place at the YWCA at 7 Temple Street in Cambridge and that it had been committed by a white male with dark hair, approximately 5′8″ to 5′9″ tall, wearing a maroon jacket. When Officer Sullivan arrived in the area he proceeded to 820 Massachusetts Avenue, where he observed Robert Lambert, a codefendant, a white male wearing a maroon jacket and otherwise fitting the description of the robber, getting into the right rear door of a taxi that was double parked on the street. The defendant, William Botto, was sitting in the back seat of the taxi behind the driver. Upon seeing Lambert, Officer Sullivan pulled his cruiser in front of the taxi and proceeded to pat him down for weapons. No weapon was found on Lambert's person.

Officer Sullivan further testified that he spoke with two female employees of the YWCA who made positive identifications of Lambert as the man who had attempted to rob them. These employees indicated that Lambert had walked into the YWCA, had asked if a particular female resided there, and was informed that she did not. He stood in the lobby of the YWCA for a few minutes and then walked over to the counter. He pointed a handgun at the victims and demanded their money. They told him that they had no money, and he left the building. A small black handgun was later found underneath the back of the front seat of the taxi on the passenger side. Lambert had been sitting on the passenger side in the back seat of the taxi.

Officer Sullivan testified that he also made inquiries of the cabdriver. The driver stated that he had picked up Lambert and Botto together at a designated address on Washington Street in Boston. Lambert and Botto then told the driver to go to the YWCA at 7 Temple Street in Cambridge. At the YWCA, Lambert left the taxi while Botto remained in the taxi seated

behind the driver. When Lambert returned to the taxi, Botto told the driver to "start the cab and get going." They went around the block to the nearby YMCA at 820 Massachusetts Avenue, where Lambert again left the taxi.

In response to questions from grand jurors, Officer Sullivan repeated, or clarified, certain details of his testimony. He again indicated that the handgun had been hidden under the front seat of the taxi on the passenger side in front of where Lambert had been sitting in the back seat. Sullivan stated that the defendant Botto had remained in the taxi at all times. Lambert had left the taxi at the YWCA and had returned a few minutes later. It was at that point that Botto told the driver to "start the cab and get going," and in response to that directive the taxi proceeded to the YMCA. At the YMCA Lambert again left the taxi shortly before he was first observed by Officer Sullivan.

In dismissing the indictments, the judge ruled that there was no evidence before the grand jury to show that Botto had "commanded, counseled, encouraged or aided as a participant sharing with Lambert the mental state required of the crime[s] charged . . . [and that] there was no evidence of [an] agreement, tacit or otherwise, or confederacy which would establish probable cause for arrest. . . ." These rulings were erroneous.

A charge of conspiracy may be, and usually is, established by circumstantial evidence, see *Commonwealth* v. *Stasiun,* 349 Mass. 38, 50 (1965); *Commonwealth* v. *Gill,* 5 Mass. App. Ct. 337, 348-349 (1977), and a common criminal enterprise can be inferred from concerted action converging toward the accomplishment of a definite end. See *Commonwealth* v. *Beal,* 314 Mass. 210, 221 (1943). Similarly, circumstantial proof of a defendant's knowledge of the circumstances of, and subsequent participation in, a robbery can establish that he is an accomplice. See *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980). See also *Commonwealth* v. *Soares,* 377 Mass. 461, 477, cert. denied, 444 U.S. 881 (1979). It is enough if, by agreement, a person is in a position to render aid to the principal offender even if he does not participate in the actual perpetration of the crime, simply because his presence may encourage the perpetrator by furnishing hope of immediate assistance. See *Commonwealth* v. *Casale, supra*; *Commonwealth* v. *Soares, supra* at 471-472.

The events of February 17, 1983, "had a tendency to show an intimate and suspicious companionship" of a criminal nature between Lambert and Botto. *Commonwealth* v. *Smith,* 163 Mass. 411, 420 (1895). The judge was influenced by his view of the evidence that "nothing appear[ed] as to the proximity [of the taxi to the YWCA] or the possible vantage point." The taxi driver told Officer Sullivan, however, that Lambert and Botto had entered his taxi together in Boston and that he was instructed to proceed directly to the YWCA at 7 Temple Street in Cambridge. It can be inferred that the driver did so, that Botto remained in the cab as a lookout seated behind the driver while Lambert entered the building, and that Botto made sure the taxi did not leave until he instructed the driver to do so. From the

facts that the taxi then was driven to the YMCA nearby, that Lambert again left the taxi while Botto remained inside, and that Lambert returned to the taxi as the marked police car blocked it off, it can be inferred that Botto was an active participant in a scheme which involved robbery or larceny at both the YWCA and the YMCA. See *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 242 (1982).

It could be inferred that Lambert did not take his handgun when he approached the YMCA (as he had at the YWCA) because he had been unsuccessful at the YWCA and wanted to "case" the YMCA before attempting another robbery. The fact that the handgun was not left in the taxi until after the assault at the YWCA might make the evidence insufficient at trial under the standard enunciated in *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), to establish that Botto knew about the weapon, but it does not, in our view, vitiate the presence of probable cause to arrest Botto for both offenses charged in the indictments. The grand jury could also have concluded that Botto had seen Lambert put the handgun under the front seat when Lambert returned to the taxi after the attempted robbery, since the two were seated side by side in the back seat of the taxi, and that Lambert had the handgun with him during the assault on the YWCA employees. Moreover, Botto remained in the taxi after the handgun had been hidden under the front seat, ordered the taxi driver to leave the YWCA, and apparently ordered the taxi to its new location near the YMCA, where he once again waited in the taxi while Lambert got out and headed for the YMCA.

Contrary to the judge's conclusion, this is not a case in which the evidence did no more than establish guilt by mere association with law breakers. There was enough evidence, with reasonable inferences particularized as to Botto, to indicate his role as a lookout and as the person in charge of directing the vehicle used in the crimes. See *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 508-511 (1983). The proof thus furnished a basis to arrest Botto as an active participant in a joint criminal venture. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 476 (1980). Accordingly, the orders dismissing the indictments, must be, and the same hereby are, reversed.

*So ordered.*

*Fredric Lee Ellis,* Assistant District Attorney, for the Commonwealth.
*Stephen F. Bowzer* for the defendant.