COMMONWEALTH *vs.* JOHN A. GRIFFIN
(and a companion case[1]).

Middlesex.    October 5, 1984. — January 9, 1985.

Present: SMITH, CUTTER, & WARNER, JJ.

*Homicide. Joint Enterprise. Evidence,* Common criminal enterprise, Ad-
missions and confessions, Cross-examination, Photograph. *Constitu-
tional Law,* Admissions and confessions, Waiver of constitutional rights.
*Waiver. Practice, Criminal,* Voluntariness of statement, Instructions to
jury, Sentence, Duplicitous convictions.

Evidence introduced by the Commonwealth at the trial of indictments aris-
ing from the death of the operator of a motorcycle and the severe injury
of his passenger warranted the jury in finding that one of the two defend-
ants, as the passenger in an automobile which pursued the motorcycle
at high speeds and eventually ran it off the road, was a willing participant
in the crimes and shared with the driver of the automobile the requisite
mental state. [178-180]
At a criminal trial the admission in evidence of statements of one joint ven-
turer, made after the crimes had been committed, presented no substantial
risk of a miscarriage of justice with respect to the other joint venturer
where the judge gave appropriate limiting instructions to the jury at the
time the statements were admitted and where he correctly instructed
them in his final charge that the declarations of one joint venturer could
be considered the declarations of another only if they were made during
the commission of the crime and in furtherance of it. [180-181]
The judge who heard a motion to suppress a series of oral and written state-
ments by a criminal defendant to police was not required to believe the
testimony of a psychiatrist as to the effects of a concussion from which
the defendant was allegedly suffering at the time he made the statements,
and the logical inference from the judge's failure to discuss or refer to
the psychiatrist's testimony was that he rejected it. [181-182]
The judge who heard a criminal defendant's motion to suppress his state-
ments to police was warranted in concluding that neither the defendant's
alleged intoxication, nor the injuries he suffered when his automobile
collided with a motorcycle, prevented him from voluntarily and intelli-

---

[1] Commonwealth *vs.* Michael Griffin.

gently waiving his Miranda rights and voluntarily making the statements. [182-184]

Where the issue of the voluntariness of a defendant's statements to police and the facts presented by counsel at trial were the same as those previously determined adversely to the defendant by the judge who heard a pretrial motion to suppress, and where there had been no change in the applicable law between the time of that hearing and the trial, the trial judge was not required by the Massachusetts "humane practice" to hold a new hearing, outside the presence of the jury, on the issue of the voluntariness of the statements. [184-185]

At the trial of criminal charges other than that of operating a motor vehicle while under the influence of intoxicating liquor there was no error either in the judge's refusal to admit the results of the defendant's blood alcohol test as part of the cross-examination of the police witness to whom the defendant had given a statement or in his refusal to allow defense counsel to ask the witness a hypothetical question as to the significance of the test results. [185-186]

At a murder trial it was within the judge's discretion to admit in evidence a photograph of the victim's body as illustrative of a pathologist's testimony about the cause of death. [187]

At the murder trial of a defendant who, while driving an automobile, had pursued a motorcycle at high speeds and had eventually run it off the road, killing the operator of the motorcycle and injuring the passenger, the defendant's testimony that the operator of the motorcycle had kicked at the door of the defendant's automobile and that the passenger had made a contemptuous gesture at him would not, if believed, have established sufficient provocation to entitle the defendant to a jury instruction on voluntary manslaughter. [187-188]

At a murder trial the judge's instructions to the jury, viewed in their entirety, created no likelihood that they could have found the defendant guilty of second degree murder without having found the necessary intent. [189]

A defendant's convictions of murder in the second degree, armed assault with intent to kill, and assault and battery by means of a dangerous weapon, an automobile, were not duplicitous, where the evidence before the jury warranted them in finding that, during pursuit of a motorcycle for several minutes until he ran it off the road, killing the operator and severely injuring the passenger, the defendant had committed several assaults on the victims which were separate from and unnecessary to the acts that resulted in the conviction of second degree murder. [189-190]

INDICTMENTS found and returned in the Superior Court Department on October 14, 1982.

A pretrial motion to suppress evidence was heard by *Elbert Tuttle,* J., and the cases were tried before *Herbert F. Travers, Jr.,* J.

*Virginia Lee* for John A. Griffin.

*Steven J. Rappaport* for Michael Griffin.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

SMITH, J. As a result of an incident that occurred in Billerica on August 1, 1982, David P. Emanouil was killed, and John D. Gilbride was severely injured. The defendants, John A. Griffin (John) and Michael Griffin (Michael), father and son, were charged with various crimes including murder in the first degree of Emanouil. The jury found both defendants guilty of murder in the second degree. In addition, both defendants were convicted of armed assault with intent to murder Emanouil and Gilbride and assault and battery on both victims by means of a dangerous weapon. The dangerous weapon involved in the crimes was the motor vehicle driven by John. The defendants allege several errors by the judge which they claim require reversal of their convictions. Neither defendant has claimed the same error as the other. Therefore we analyze the case of each defendant individually.

I. *Michael Griffin's Claims of Error.*

A. *Required findings of not guilty.* Michael contends that the judge erred in denying his motions for required findings of not guilty. We recite the main facts as they could have been found by the jury. On August 1, 1982, at about 6:00 P.M., Gilbride was riding on the back of a motorcycle driven by Emanouil along Route 129 in Chelmsford. Their ride took them to a bridge where Route 129 crosses Route 3. As the motorcycle was crossing the bridge, Gilbride noticed in front of them an automobile, described as a Nova, slow down and pull over to the right. The passenger in the automobile, later identified as Michael, was pointing at the motorcycle and appeared to be saying something to his father, John, the operator. John was smiling. Michael moved his pointing finger and his eyes, tracking the motorcycle's course as it passed the automobile. As soon as the motorcycle passed their automobile,

John pulled back onto the road and began to pursue the motorcycle on Route 129. John eventually pulled the car up along the right hand side of the motorcycle. At this point, Michael was sitting on the window of the door of the automobile and leaning over its roof toward the motorcycle. He was pointing and screaming something at Emanouil and Gilbride. John, still smiling, made repeated attempts to force the motorcycle into oncoming traffic. At one point the automobile came close enough to make contact with Gilbride's leg. Emanouil put his foot out and pushed off against the automobile, accelerated, and pulled out in front of it.

The motorcycle travelled along Route 129 to its intersection with Route 3A in Billerica, with the Nova right behind it. Emanouil took a right turn and headed south on Route 3A. He then drove into a gas station. The Nova followed the motorcycle into the gas station. John was still smiling, and Michael was still sitting on the window yelling and pointing at the motorcycle. Gilbride got off the motorcycle, took off his helmet, and faced the automobile and its occupants. Michael screamed over and over again at the victims, "You're dead," and then either, "We're going to kill you," or "I'm going to kill you." The Nova started to move toward the motorcycle. Emanouil told Gilbride to get back on the motorcycle and they rode north along Route 3A. Emanouil then turned into the parking lot of a cocktail lounge. The defendants almost went by the parking lot, but John, seeing the motorcycle, came to a stop and made a quick turn into the same parking lot. After a confrontation, the motorcycle left the parking lot, chased by the automobile. There were several cars between the Nova and the motorcycle, and the Nova weaved in and out of traffic in an attempt to catch up to the motorcycle. Michael was seen waving a tire iron out of his window yelling and pointing at the victims. The automobile finally caught up to the motorcycle and rammed it from behind. It forced the motorcycle to hit a pick-up truck and then ran the motorcycle off the road. Gilbride was thrown off the motorcycle into a telephone pole where he lay with his legs wrapped around the pole. Emanouil was pinned beneath

the wreckage of his motorcycle and the automobile. He died of multiple contusions of the brain.

It was the Commonwealth's theory at trial that the defendant's were engaged in a joint venture at the time the crimes were committed. The issue of the culpability of defendants under the concept of a joint venture has been frequently discussed by appellate courts. "[O]ne who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal." *Commonwealth* v. *Soares,* 377 Mass. 461, 470 (1979). *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980). *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 509 (1983). Mere presence at the commission of the crime and the "failure to take affirmative steps to prevent it . . . [do not] render a person liable as a participant." *Commonwealth* v. *Benders,* 361 Mass. 704, 708 (1972). *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 241 (1982). The Commonwealth must show that a defendant somehow participated in committing the offense to the extent that he sought to make it succeed. *Commonwealth* v. *Benders, supra* at 707-708. *Commonwealth* v. *Amaral, supra* at 242. Michael contends that it was error to deny his motions for required findings of not guilty because the evidence (1) was insufficient as to his participation in a joint venture with John and (2) failed to show that he shared with John the mental state required for the crimes of which he was convicted.

In order to resolve this issue, we must determine whether the evidence, including inferences that are not too remote according to the usual course of events, "read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt." *Commonwealth* v. *Basch,* 386 Mass. 620, 622 (1982). The only evidence considered by us is that evidence introduced during the Commonwealth's case in chief. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). *Commonwealth* v. *Soares,* 377 Mass. 461, 464 (1979).[2]

---

[2] The Commonwealth's case did not deteriorate during the presentation of the defendant's evidence. Therefore, we need not consider separately the

Based on the evidence introduced by the Commonwealth, the jury could find that Michael was a willing participant in the commission of the crimes and shared with John the mental state required for the crimes. The evidence disclosed that after Michael pointed to the victims and said something to John, the pursuit of the motorcycle by the automobile started. While John was attempting to force the motorcycle into oncoming traffic (the same maneuver that later caused the death of Emanouil and brought serious injuries to Gilbride), Michael was leaning over the roof of the automobile and screaming at the victims. Later during the chase, he yelled at the victims, over and over, that either he or he and John intended to kill them. Finally, during the last phase of the relentless pursuit of the motorcycle by the automobile, Michael yelled and shook a tire iron at the victims. A jury could conclude, on this evidence, that Michael was more than a passive observer during the commission of the crimes, and in fact aided, counselled and encouraged John in their commission.

Michael's second contention, that the evidence did not show that he shared with John the requisite mental state for the crimes is also without merit. The jury could have inferred Michael's mental state from his knowledge of the circumstances and from his conduct and that of John. Michael was aware early in the course of the high speed chase of the motorcycle that John was using the automobile as a weapon either to strike the motorcycle or force it into oncoming traffic. Later, Michael yelled at the victims that either he or he and John intended to kill them. This evidence was sufficient to show that Michael shared with his father the intent necessary for second degree murder, see *Commonwealth* v. *Casale,* 381 Mass. 167, 172 (1980), armed assault with intent to murder; see *Salemme* v. *Commonwealth,* 370 Mass. 421, 424 (1976), and assault and battery with a dangerous weapon; see *Commonwealth* v. *Appleby,* 380 Mass. 296, 307 (1980). Therefore, the

---

defendant's renewed motions for required findings of not guilty filed at the close of all the evidence. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 n.1 (1976). *Commonwealth* v. *Cola,* 18 Mass. App. Ct. 598, 600 n.3 (1984).

judge was correct in submitting the issue of joint venture to the jury.

B.  *Instructions in regard to admissibility of John's statements as to Michael.* The prosecutor introduced in evidence several postarrest statements of John made outside the presence of Michael.[3] The judge limited the admissions of the statements to John and so stated to the jury at the time the statements were admitted. Michael argues that the judge's final instructions to the jury improperly allowed them to apply John's statements against Michael, even though the statements were made after the commission of the crimes. There was, however, no objection by trial counsel to the judge's instructions.[4] At the conclusion of his instructions, the judge said to all counsel, "Anything else, gentlemen?" to which Michael's counsel responded, "I'm satisfied with the definitions, joint venture, the charge itself, Your Honor." Since there was no objection to the instructions on joint venture, Michael is foreclosed from raising the issue of the adequacy of the instructions on appeal. Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 511-512 (1983). We review the matter "solely to determine whether there was error and if so whether there exists a substantial risk of a miscarriage of justice." *Commonwealth* v. *Brown,* 392 Mass. 632, 636 (1984).

It is settled that, once the existence of a joint venture has been established, extrajudicial statements made by a joint venturer during the pendency of the criminal enterprise and in furtherance of it may be admissible against the others involved. *Commonwealth* v. *Borans,* 379 Mass. 117, 146 (1979). *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 340 (1983). Perhaps because the admission of such evidence is an exception

---

[3] The admissibility of John's statements is discussed in part II A of this opinion.

[4] Michael's trial counsel, with permission from the judge, made a general objection to the use of John's statements against Michael. In addition, he made specific objections which were sustained by the judge as John's statements were introduced. A specific objection to instructions of a judge is required by Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). The objections by Michael's counsel during the course of the trial do not meet the requirements of the rule.

to the hearsay rule, the Supreme Judicial Court has taken the "pains to stress that '[n]ot all statements of . . . joint criminal venturers are admissible against an absent defendant [i.e. absent at the time of the utterance] . . . . They must be made both during the pendency of the coöperative effort and in furtherance of its goal.'" *Commonwealth* v. *White,* 370 Mass. 703, 708-709 (1976), quoting in part from *Commonwealth* v. *Pleasant,* 366 Mass. 100, 104 (1974).

Twice during his closing instructions the judge informed the jury that the declarations of one joint venturer could be considered the declarations of another if made during the course of the crime and in furtherance of it. He did not allude specifically to the admissibility of John's statements as against Michael, but twice during the course of the trial he had instructed the jury that John's statements were not admissible against Michael. He was not required to repeat that limiting instruction in his charge. There was no error.[5]

II.  *John Griffin's Claims of Error.*

A.  *Motion to suppress statements.* Prior to trial John filed a motion to suppress a series of oral and written statements made by him to the police. After a two-day hearing, the motion judge ruled that John had made a knowing and intelligent waiver of his Miranda rights and that John's statements were voluntarily made by him. John argues that the rulings were incorrect because the judge failed to take into account a psychiatrist's opinion of John's medical condition at the time that he made the statements. There was no error.

A psychiatrist testified on John's behalf at the suppression hearing. He stated that, in his opinion, at the time that John made the statements to the police, he was suffering from a slight concussion received in the crash. That medical condition, in the psychiatrist's opinion, affected John's cognitive processes with the result that he could not effectively respond to the

---

[5] Even if there was error, there was no danger of a substantial risk of a miscarriage of justice to Michael from the judge's instructions. John, in his statements, never referred to Michael in any way, nor did he make reference to any act or statement of Michael. In addition, there was strong direct evidence of Michael's involvement in the crimes.

statements concerning his rights.[6] The judge, in his findings, did not discuss in any way the psychiatrist's testimony, nor did he conclude that John was suffering from a concussion at the time that he made the statements. John contends that the failure of the judge to discuss or refer to the psychiatrist's testimony indicates that he never considered it, thereby raising doubts as to the correctness of the judge's ultimate conclusions regarding the voluntariness of the waiver and statements.

Contrary to the defendant's arguments, the motion judge was not required to accept the testimony of the psychiatrist. *Commonwealth* v. *Doucette,* 391 Mass. 443, 448 (1984) ("The judge is not required to find all evidence credible"). *Commonwealth* v. *Harvey,* 390 Mass. 203, 206 n.4 (1983) ("A judge may accept or reject, in whole or in part, the testimony offered on a motion to suppress"). The logical inference from the judge's failure to discuss the psychiatrist's testimony is that he rejected it. Because questions of credibility of the witnesses are for the motion judge and not for us, there was no error. *Commonwealth* v. *Murphy,* 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring).

John argues that his consumption of alcohol and his weakened physical condition resulting from injuries suffered in the crash prevented him from making a knowing and voluntary waiver and also rendered his statements involuntary. The judge found that John was "under the influence of intoxicating liquor" and had cuts on his lip and chin. Nonetheless, he found that John could and did make a knowing and intelligent waiver of his Miranda rights and that the statements were voluntarily made and the product of a rational intellect.

When an appellate court reviews a judge's determination that a waiver of Miranda rights was voluntarily given and incriminating statements were voluntarily made, it grants substantial deference to the judge's ultimate conclusions, and it will not reject a judge's subsidiary findings if they are warranted

---

[6] The psychiatrist testified that he first interviewed John on December 27, 1982, and that his opinions were based on versions of the August 1, 1982, incident that were told to him by the defendants and defense counsel.

by the evidence. *Commonwealth* v. *Tavares,* 385 Mass. 140, 144-145 (1982). *Commonwealth* v. *Benoit,* 389 Mass. 411, 419 (1983). In order to fulfil its appellate function, however, the court "make[s] an independent determination about the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Williams,* 388 Mass. 846, 851 (1983).[7] Whether there is a valid waiver or whether a statement was voluntarily given depends upon the totality of the circumstances. *Commonwealth* v. *Wilborne,* 382 Mass. 241, 252 (1981). *Commonwealth* v. *Benoit, supra.*

We first discuss whether the defendant made a knowing and intelligent waiver of his Miranda rights. The Commonwealth bears a heavy burden in demonstrating a valid waiver. *Commonwealth* v. *Silva,* 388 Mass. 495, 500-501 (1983). However, intoxication alone is not sufficient to negate an otherwise voluntary act. *Commonwealth* v. *Doucette,* 391 Mass. at 448. Although the judge found that the defendant was under the influence of intoxicating liquor,[8] he also found that John was alert and cognizant of everything going on around him. That latter finding is clearly borne out by other findings of the judge. The record shows that John received a complete recitation of his Miranda rights on five separate occasions. He responded to the recitation of the rights on every occasion either that he knew his rights or that he understood his rights. He complied promptly and correctly with all the requests of the police when they drove him from the crash scene to the police station and later to the hospital for treatment of his cuts. He answered in a responsive manner all the questions of the booking officer. He dictated a coherent, rational statement to the police that

---

[7] Although voluntariness of a confession and waiver of Miranda rights are different issues, the same standards of review are applied to both. *Commonwealth* v. *Williams, supra.*

[8] The use of the phrase "under the influence of intoxicating liquor" by the judge does not mean that he found the defendant to be drunk. It is well settled that "there is a distinction between [drunkenness] on the one hand and merely being under the influence of liquor on the other hand, which is recognized in common speech, in ordinary experience, and in judicial decisions." *Commonwealth* v. *Lyseth,* 250 Mass. 555, 558 (1925), quoting from *Cutter* v. *Cooper,* 234 Mass. 307, 317-318 (1920).

detailed his activities over a period of several hours and then insisted on making two relevant changes in his statement. *Commonwealth* v. *Sires,* 370 Mass. 541, 545 (1976) (defendant gave coherent narrative of the events of the prior day). In addition, there was evidence that, although John had the odor of alcohol on his breath, his speech and walk were normal.[9] Therefore, the record amply supports the judge's conclusion that the Commonwealth had sustained its heavy burden as to the waiver of John's Miranda rights.

Our second inquiry is whether John's incriminating statements were voluntary. After reviewing the circumstances of the giving of the statements by John, we conclude that the motion judge was warranted in determining that the statements were freely and voluntarily given and a product of a rational intellect. Our decision is based primarily on our reasoning concerning John's waiver of his Miranda rights, in particular the fact that John was advised of his Miranda rights repeatedly and that he acknowledged that he understood or knew them. *Commonwealth* v. *Zukoski,* 370 Mass. 23, 29 (1976).

B. *Trial judge's failure to assess voluntariness of John's statements.* "Our 'humane practice' requires that 'when [a defendant's incriminating] statements amounting to a confession are offered in evidence, the question whether they were voluntary is to be decided at a preliminary hearing in the absence of the jury. If he [the judge] is satisfied that they are voluntary, they are admissible; otherwise, they should be excluded."*Commonwealth* v. *Tavares,* 385 Mass. 140, 149 (1982), quoting from *Commonwealth* v. *Marshall,* 338 Mass. 460, 461-462 (1959), and cases cited. Despite having had a full and complete

---

[9] John also argues that the combination of his intoxication and his "concussion" suffered in the crash made him incapable of giving a knowing, intelligent waiver of his Miranda rights. As pointed out in the body of the opinion, the judge did not accept John's evidence that he was suffering from a concussion at the time he made the statements. There was evidence that John suffered some facial cuts in the crash. The fact that a defendant's physical condition may be somewhat less than well does not automatically invalidate a waiver. *Commonwealth* v. *Wilborne,* 382 Mass. 241, 251-252 (1981). The cuts, either by themselves or in combination with John's "intoxication" did not render his waiver or his statements involuntary.

hearing on the issue of voluntariness before the motion judge, John's counsel moved that the trial judge conduct a preliminary hearing on the same question, outside the presence of the jury. In answer to an inquiry by the judge, counsel conceded that he had nothing new to offer and intended to introduce the same matters previously presented to the motion judge. The basis for counsel's motion was counsel's belief that the "humane practice" required the trial judge to conduct the preliminary hearing over again. The trial judge denied the motion.

The judge was correct. It was not an abuse of the judge's discretion to deny a hearing because "[i]f the available issues and relevant facts are the same on two successive motions seeking substantially identical relief, [there is] no reason to require a full hearing on the second motion, unless the applicable law has changed since the first hearing." *Commonwealth v. Upton,* 390 Mass. 562, 565 n.3 (1983), rev'd and remanded on other grounds, 466 U.S. 727 (1984). The issue and the facts as to voluntariness raised by counsel at the trial were identical to the issue and facts decided by the motion judge. There was no contention that the law had been changed. The hearing before the motion judge satisfied the "humane practice" requirement of a preliminary hearing on the voluntariness issue.

C. *Restriction of cross-examination of a Commonwealth witness.* At trial, John's counsel attempted to establish that the defendant had been so intoxicated that a statement which he had given to the police could not have been voluntary. The statement had been dictated by John to one Sergeant Revane, who testified that, in his opinion, John was sober at the time he gave the statement. After his arrest John was administered a blood alcohol test, and the result showed that his blood alcohol level was .16 percent. During cross-examination of Sergeant Revane, the judge did not allow John's counsel to introduce in evidence the result of the test. The judge also did not allow counsel to ask Sergeant Revane a hypothetical question concerning the significance of the .16 percent figure in relation to the witness's opinion that John was sober. At the close of all the evidence, the judge reversed his ruling and permitted the introduction in evidence of the results of the blood

alcohol test. He also instructed the jury that a blood alcohol level of .10 percent or more gives rise to an inference that the defendant was under the influence of intoxicating liquor. John argues that the judge's action in failing to admit the results of the blood alcohol test until the close of all the evidence and his refusal to allow the hypothetical question violated the defendant's Sixth Amendment right to confront the witnesses against him.

The appellate courts of the Commonwealth, "[w]ithout derogating from the importance to a fair trial of the right of cross-examination . . .. have recognized that this right is not necessarily infringed by curbing inquiry where the matters sought to be elicited have been sufficiently brought to the attention of the trier of fact through other questioning or other means." *Commonwealth* v. *Walker,* 370 Mass. 548, 572 (1976). See *Commonwealth* v. *Borans,* 379 Mass. 117, 151 (1979); *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 712-714 (1974). The jury were made aware of the blood alcohol tests and were informed about the statutory inference. Actually, the defendant received more from the judge's instruction than that to which he was entitled. It is only in the prosecution of persons for operating a motor vehicle while under the influence of intoxicating liquor that the Legislature has declared that a blood alcohol level of .10 percent or more creates a presumption that a person is under the influence of intoxicating liquor. G. L. c. 90, § 24(1)(*e*). John was not being prosecuted for operating a motor vehicle while under the influence of intoxicating liquor. The statutory presumption, therefore, did not apply to him. It is for this reason that the judge's exclusion of the hypothetical question was correct. It was necessary for John to have an expert testify about the significance of the .16 percent because the statutory presumption was not available. As the judge recognized, there was no showing that Sergeant Revane was an expert witness capable of giving an opinion on the significance of the .16 percent figure. We also note that defense counsel was not foreclosed from asking this witness or other witnesses who observed John questions about his demeanor, gait, and speech or similar questions not requiring the technical knowledge of an expert.

D. *Admission of photograph of deceased.* During the tes-timony of the forensic pathologist who performed the autopsy, the judge allowed the Commonwealth to introduce a black and white photograph of the deceased. The photograph was used by the pathologist to point out to the jury the various injuries to the body of the deceased. In response to a hypothetical question, he testified that, in his opinion, the deceased's injuries were consistent with the deceased's having been on a moving motorcycle which had struck a telephone pole. The photograph was used to aid the jury in understanding the injuries to the deceased and to illustrate the pathologist's testimony about the cause of death. *Commonwealth* v. *Horton,* 376 Mass. 380, 399 (1978). The photograph possessed evidentiary value on a material matter. *Commonwealth* v. *Westmoreland,* 388 Mass. 269, 279 (1983). There was no error.

E. *Instructions on murder indictment.* John argues that the judge's instructions on the murder indictment were erroneous because the judge (1) failed to instruct the jury on voluntary manslaughter and (2) incorrectly used the word "indifferent" in discussing the intent necessary in order to convict of murder in the second degree.

1. *Failure to instruct the jury concerning voluntary man-slaughter.* The judge instructed the jury on first degree murder, second degree murder, and involuntary manslaughter. John objected to the judge's refusal to instruct the jury on voluntary manslaughter. The judge must give such instruction "if, on any view of the evidence, regardless of the credibility of the hypothesis, a finding of [voluntary] manslaughter might be made". *Commonwealth* v. *Bellamy,* 391 Mass. 511, 514 (1984). The judge, however, is not required to charge "on a hypothesis not supported by the evidence." *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975).

The judge refused John's request to instruct the jury on voluntary manslaughter on the ground that there was not estab-lished, as matter of law, sufficient provocation to constitute voluntary manslaughter. John argues that certain facts con-tained in his testimony required the judge to instruct on volun-tary manslaughter. We summarize those facts, assuming "the

version of the facts most favorable to the defendant." *Commonwealth* v. *Schnopps,* 383 Mass. 178, 179 (1981). *Commonwealth* v. *Burke,* 376 Mass. 539, 542 (1978).

John testified that the incident began with the motorcycle being operated in an erratic manner in front of his car. The operator continually altered the motorcycle's speed, slowing down, speeding up, slowing down, and then "started zig zagging" in front of the car. John blew his horn, speeded up the car, and started to pass the motorcycle on its right side. As he "got up beside the motorcycle, the operator of it reached out his right foot and gave the driver's door a kick." After the door was kicked, the rider on the back of the motorcycle gave John "the finger" and the motorcycle sped off. The foregoing are all the facts relied on by John that he claims required the judge to instruct on voluntary manslaughter.

It has been stated that "[i]nstructions on voluntary manslaughter must be given if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." *Commonwealth* v. *Schnopps, supra,* at 180. Provocation cannot be provided by insulting, obscene gestures alone. Nolan, Criminal Law § 203 (1976). Perkins, Criminal Law 96 (2d ed. 1969). Similarly, the kick that hit the car door, but not John, was not sufficient provocation. See *Commonwealth* v. *Vanderpool,* 367 Mass. at 746 ("[e]ven if the jury had believed that the parties swung at each other, no blows were ever landed and the situation could not have objectively met the requirements of 'combat,' 'passion' or 'heat of blood' "). No view of the evidence "would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth* v. *Walden,* 380 Mass. 724, 728 (1980). *Commonwealth* v. *Estremera,* 383 Mass. 382, 392 (1981).

2. *Second degree murder instruction.* In his instruction to the jury on second degree murder, the judge stated, "The act may be malicious legally, even though the one doing it was *indifferent* as to whether death should result or in fact hoped it would not" (emphasis supplied). The jury, after deliberations had commenced, asked for reinstruction on murder in the first degree, murder in the second degree, and manslaughter. The judge complied with their request but this time did not use the word "indifferent" in his instruction on second degree murder. John contends that the use of the word "indifferent" by the judge gave the jury the impression that John could be guilty of second degree murder without intending to do any harm. We reject John's contention.

We have examined the judge's entire instruction on second degree murder, including his supplemental instruction. He stated more than once that the malice aforethought necessary for second degree murder requires a finding that a defendant intended to inflict injury on the victim without legal excuse or palliation. He emphasized that, although a defendant need not have intended to kill the victim, at the very least he must have intended to do an act creating a plain and strong likelihood that death or grievous harm would follow. Viewing his instructions as a whole, we see no danger that the jury could have found the defendant guilty of second degree murder without having found the necessary intent.

F. *Consecutive sentences.* John was sentenced to life imprisonment on his second degree murder conviction and nine to ten years on his other convictions. These sentences were ordered to run concurrently with each other, but from and after the life sentence. The Appellate Division of the Superior Court ordered that John's sentence be amended to require that the consecutive sentences be served concurrently with the life sentence. John argues that despite the concurrent sentences, see *Commonwealth* v. *Jones,* 382 Mass. 387, 395 (1981), the convictions of armed assault with intent to kill and assault and battery with a dangerous weapon should be vacated. He contends that those offenses are included in the offense of second degree murder.

. "In determining whether, on the basis of a single act, a defendant may be prosecuted and punished for two statutory or common law crimes, the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not. . . . If so, neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not duplicitous." *Commonwealth* v. *Jones, supra* at 393. Because of the circumstances present in this case, the holding in the *Jones* case does not apply.

The pursuit of the motorcycle by John, which took several minutes, covered a considerable distance. The recited evidence shows that the several assaults and batteries, and assaults with intent to murder, were separate from and unnecessary to the acts that resulted in the conviction of second degree murder. "We are thus concerned with distinct acts that constitute violations of different statutes, see *Commonwealth* v. *McCan,* 277 Mass. 199, 203 (1931), and not a single act that may be an offense against two statutes. See *Commonwealth* v. *Crocker,* 384 Mass. 353, 357-359 (1981)." *Commonwealth* v. *Fitzpatrick,* 14 Mass. App. Ct. 1001, 1002 (1982). The separate assaults on the victims and the second degree murder are not offenses "so closely related in fact as to constitute in substance but a single crime." *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 662-663 (1979). The convictions of John were not duplicitous.

*Judgments affirmed.*